Rockingham
No. 2003-039

THE STATE OF NEW HAMPSHIRE

v.

DANIEL BARNES

Argued: January 15, 2004
Opinion Issued: April 16, 2004

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Daniel Barnes, appeals his conviction, after a jury trial in the Superior Court (*McHugh*, J.), on one count of driving after certification as a habitual offender, *see* RSA 262:23 (1993) (amended 2000, 2001, 2003). We vacate and remand.

The record supports the following facts. On March 3, 1999, two men, apparently intoxicated, attempted to buy beer at a convenience store in Seabrook and were refused service. Thereafter, they indicated that they would drive to another convenience store in Seabrook. As they drove away, the clerk called the Seabrook Police Department and reported that two intoxicated men were driving in a black pickup truck to the other Seabrook convenience store. The clerk also reported that the man wearing a black or red baseball hat got into the driver's side of the truck, that the other man got into the passenger's side and that he did not see anyone else in the truck.

Officer Allen of the Seabrook Police Department received a dispatch about this incident and went to the second convenience store to investigate. Moments after he arrived, he saw a black pickup truck drive into the parking lot and park in front of the store. He witnessed the defendant, who was wearing a black baseball hat, get out of the driver's side of the truck and another man, David Belanger, get out of the passenger's side. He did not see anyone else in the truck. When the two men entered the store, he drove his cruiser behind the truck and parked.

Officer Cawley of the Seabrook Police Department also received a dispatch and went to the store. As he drove his cruiser behind the store, he heard Officer Allen report on his police radio that he had located the truck and that two individuals had alighted from it and entered the store.

The two officers entered the store and asked the defendant and Belanger for their licenses. Belanger said that he did not have a license and that he was not driving. The defendant stated that he did not have his license with him. According to the officers, he did not deny driving or indicate that anyone else was driving. Officer Cawley, after obtaining the defendant's date of birth and social security number, ran a license check and learned that he was a habitual offender in New Hampshire.

Detective Granlund also received a dispatch and arrived at the store while Officers Allen and Cawley were questioning the defendant and Belanger. He and Officer Allen subsequently talked with the defendant outside the store. According to Detective Granlund, the defendant

attempted to explain why he did not have his license with him, but did not deny driving the truck or indicate that anyone else was driving.

The defendant was arrested and later indicted on one count of driving after certification as a habitual offender. The defendant pled guilty, but subsequently moved to withdraw his plea. After a hearing at which he denied driving the truck on the day and night in question, the court granted the motion. Following a jury trial, the defendant was convicted on one count of driving after certification as a habitual offender. This appeal followed.

The defendant contends that the trial court erred by: (1) allowing the State to impeach him at trial with testimony he gave at his plea withdrawal hearing; and (2) denying his motion to compel the State to produce certain computer records.

In support of his first argument, the defendant asserts that New Hampshire Rule of Evidence 410 "precludes the impeachment use of statements related to a withdrawn guilty plea." The State argues that the rule "was not meant to preclude [it] from introducing factual statements made by a defendant at a plea withdrawal hearing because to do so would not promote the intent or purpose of the rule." The State argues in the alternative that any error in admitting the evidence was harmless. Assuming, without deciding, that the trial court erred in admitting the evidence, we hold that the error was harmless.

An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict. *See State v. Goodale*, 144 N.H. 224, 232 (1999). The State bears the burden of proving that an error is harmless. *See id.* The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence. *See State v. Enderson*, 148 N.H. 252, 255 (2002). An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *See id.*

The evidence introduced by the State in this case was compelling. The clerk of the first convenience store testified that he saw only two men in the truck and that the man matching the defendant's description got into the driver's side of the truck. Officer Allen testified that he saw only two men get out of the pickup truck at the second convenience store and that the defendant got out of the driver's side. Officer Cawley testified that he heard Officer Allen report that he had located the truck and observed two men alight from it. Officers Allen and Cawley and Detective Granlund all

testified that the defendant made excuses for not having his license, but did not deny driving or contend that a third party was driving.

In contrast, the contested evidence was inconsequential. At trial, the defendant was impeached by the State with respect to three issues. First, the defendant testified that he intended to buy beer and wine at the second convenience store. The State impeached his credibility by indicating that, on a previous occasion, he had testified that he intended to buy candy at the second convenience store. He had actually testified, at his plea withdrawal hearing, that he intended to buy candy at the first convenience store, however, defense counsel made no objection. Second, the defendant testified that he had been drinking alcohol on the night in question. The State impeached him by establishing that he had previously indicated that he told the investigating police officers that he had not been drinking alcohol. Finally, the defendant testified that he stopped by a friend's party prior to going to the first convenience store. The State impeached him by noting that he had not mentioned stopping at this party when he had previously recounted the events of the day and night in question.

The impeachment concerned issues unrelated to the State's evidence of the defendant's guilt and was essentially rendered inconsequential when the State introduced evidence of the defendant's numerous prior convictions, several of which involved giving false information to law enforcement. Indeed, the State highlighted those convictions in its closing argument, not the fact that it had impeached the defendant regarding specific details of the events that transpired on March 3, 1999.

Furthermore, the trial court instructed the jury not to use the inconsistent statements for any purpose other than "deciding whether to believe a witness at trial." This prevented the jury from improperly inferring, based on the defendant's impeachment, that the defendant initially denied drinking alcohol in order to avoid a prosecution for driving under the influence. *See State v. Manna*, 130 N.H. 306, 310 (1988) (juries are presumed to follow the instructions of the trial court).

■ While we acknowledge that this case primarily hinged upon credibility, in view of the overwhelming nature of the State's evidence, we are convinced beyond a reasonable doubt that impeaching the defendant with regard to details of the day and night in question did not affect the verdict. *See Goodale*, 144 N.H. at 234.

The defendant also contends that the trial court erred by denying his motion to compel the State to produce certain computer records. His argument is based on the assumption that "internal police dispatch records that are designed to track the times officers receive and respond to calls"

exist. He asserts that those records, if they exist, may have "demonstrated that, if [the defendant] went directly from [the first convenience store to the second convenience store], Officer Allen could not have arrived at [the second convenience store] before [the defendant], as he claimed," and may have "corroborated [his] claim that there was no police cruiser in the . . . parking lot at the time his truck arrived there." We agree.

■ We review a trial court's rulings on the management of discovery under an unsustainable exercise of discretion standard. *See State v. Amirault*, 149 N.H. 541, 543 (2003). To establish that the trial court erred under this standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See id.*

The trial court denied the motion to compel because it found that "the information requested, even if it does exist, will not provide the jury with any relevant evidence of the defendant's innocence. . . . The defendant has no way of proving exactly when he entered the [second] store or how long he remained there before the police entered. Thus the knowledge of the exact time of arrival of the police to the [second] store['s] parking lot would be of no assistance to the defendant in asserting his claim that the police were not in [that] parking lot at the time of his arrival there."

Based on the record, it would have taken the defendant approximately two to seven minutes to travel directly from the first store to the second store. According to the Seabrook Police Department's dispatch log, the clerk of the first store reported the incident at approximately 11:15 p.m., while the defendant was allegedly driving the truck away from the store, and Officer Allen received a dispatch about the incident at approximately 11:17 p.m. If, for instance, the requested records show that Officer Allen did not arrive at the second store until ten minutes had elapsed from the time he received the dispatch, the defendant's claim that Officer Allen was not there when he arrived at the second store becomes more credible. Officer Allen would have arrived twelve minutes after the defendant began what was, by all accounts, a two to seven minute drive. Conversely, Officer Allen's testimony, that he witnessed the pickup truck arrive at the second store and the defendant get out of the driver's side, becomes less credible.

The State contends that "[e]ven if the [records] had some marginal relevance," it would have been within the trial court's discretion to deny the defendant's motion to compel as untimely. The trial court, however, did not address the motion on that ground. Therefore, we will not address it for the first time on appeal. *See Exeter Hosp. Medical Staff v. Board of Trustees of Exeter Health Resources*, 148 N.H. 492, 498-99 (2002).

On remand, the trial court should order a new trial if the records exist, unless the State proves that the defendant's inability to use the records in the first trial was harmless beyond a reasonable doubt. *See Amirault*, 149 N.H. at 545. We cannot presently determine whether the trial court's error was harmless beyond a reasonable doubt because the existence and content of the records are unknown.

Finally, to the extent the defendant may be arguing that a different standard applies to these circumstances under either the State or Federal Constitution, he has not adequately developed the argument and we deem it waived. *See Allen v. State of N.H.*, 147 N.H. 243, 248-49 (2001).

*Vacated and remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.