Belknap
No. 2006-011

THE STATE OF NEW HAMPSHIRE

v.

WALTER BEEDE

Submitted: March 22, 2007
Opinion Issued: August 28, 2007

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief, for the defendant.

HICKS, J. The defendant, Walter Beede, appeals his conviction of seven class A felony counts, one class B felony count and two misdemeanor counts of theft by unauthorized taking, *see* RSA 637:3, :11 (2007), after a jury trial in the Superior Court (*Vaughan*, J.). He argues: (1) the trial court improperly admitted various bank records under the business records exception to the hearsay rule, N.H. R. Ev. 803(6); and (2) the trial court erred in sentencing him to a probation term exceeding that permitted by statute for his misdemeanor convictions, *see* RSA 651:2, V(a) (2007). We affirm.

*I. Background*

The jury could have found the following. In 1994, Jay Howland Enterprises (JHE), which was under the sole ownership of Jay Howland (Howland), invested in land in New Hampshire for purposes of developing and selling it. JHE contracted with the defendant to manage the development, marketing and sale of properties purchased in Laconia. Howland subsequently created Jay Howland Realty (JHR) under JHE, through which the developed lots were sold. The defendant worked primarily out of the local office JHE maintained in Gilford.

The contract between JHE and the defendant provided that: "All sums and payments relating to sales of portions of the Parcels shall be paid to Owner [Howland]." Initially, the defendant deposited payments to JHE into the company's Citizens Bank account in New Hampshire, but later Howland required that all payments be sent to the corporate office in Massachusetts. Howland alone had authority to open bank accounts for JHE and JHR, but the defendant had authority to access the two business accounts to pay his own salary, to reimburse himself for the costs of running the office and to pay contractors and others hired in developing the properties.

On April 1, 1997, an account was opened under the name "Walter F[.] Beede [d/b/a] Jay Howland Realty" at Gilford Village Bank & Trust (GVB), which was subsequently purchased by Laconia Savings Bank (LSB). Howland was unaware of the existence of this account, although checks made payable to JHE were deposited into the account. Two checks bearing the defendant's signature were also written from the account for purposes totally unrelated to the business of JHE, including one to the defendant's former girlfriend and another to a building supply company. The account was closed in September 1999.

Upon dissolution of the business relationship between the defendant and Howland in 1999, Howland's bookkeeper, Mary Adams, realized that neither Howland nor either of his companies had received payment for Lot 209, which was sold to David Ames for $31,325.50, or for a boatslip that was sold to Steven LeBoeuf for $25,801.74. Howland contacted an attorney who subsequently contacted the Belknap County Sheriff's Department to investigate. A detective with the sheriff's department discovered that the Ames and LeBoeuf payments along with nine other checks written to JHE had been deposited into the GVB account. Howland received none of the money deposited into the GVB account.

At trial, the State called Shaun Sanborn (Sanborn), vice president of security at LSB, as a witness. Through Sanborn, the State introduced several records created at GVB and subsequently transferred to LSB.

That evidence included: a business account agreement and a sole proprietorship resolution form; two checks drawn from the account; seven checks and two money orders deposited into the account; and nine pages of monthly account statements. LSB acquired GVB in October 2005. While LSB held GVB's records, Sanborn never worked for GVB and lacked knowledge of their practices. The defendant objected to the introduction of each bank record as hearsay. The court, however, admitted the records under the business records exception to the hearsay rule over the defendant's objection that the exception did not apply because Sanborn was not qualified to testify under New Hampshire Rule of Evidence 803(6).

On appeal, the defendant argues that the trial judge erred in admitting the aforementioned documents under Rule 803(6) because the records themselves as well as information contained within them each constituted hearsay, resulting in inadmissible double hearsay. He contends that the records' admission prejudiced his case because the prosecutor relied upon them heavily in his closing argument.

We review the trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard. *State v. Ainsworth*, 151 N.H. 691, 694 (2005). Therefore, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *Id.*

## II. Business Account Agreement, Sole Proprietorship Resolution Form, Checks and Money Orders

The trial court's application of the business records exception to the seven checks and two money orders deposited into the account and the two checks written from the account was unnecessary because these documents, as well as the signatures contained therein, are not hearsay.

■■ "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). However, as one court has explained in the context of the identical federal rule of evidence, "out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay. They are considered 'verbal acts.' Checks fall squarely in this category of legally-operative verbal acts that are not barred by the hearsay rule." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir.) (citations omitted), *cert. denied*, 543 U.S. 943 (2004). Therefore, the checks and money orders made out to JHE and the checks drawn from the GVB account are legally operative statements that were admissible as such. Likewise, the business account agreement and the sole proprietorship resolution form were themselves admissible as legally

operative verbal conduct for the limited purpose of establishing that some individual submitted the forms to GVB. *Cf. United States v. Marrinson,* No. 85 CR 225, 1986 WL 2123, at *3 (N.D. Ill. Feb. 3, 1986) (mem.) ("[A]n [account] application may be admitted to prove that an individual submitted the application to the particular business."); *see also Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 540 (5th Cir. 1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay." (quotation omitted)).

The defendant further argues, however, that the information contained within these records, such as the signature "Wal[ly] Beede," is inadmissible hearsay because it consists of "out-of-court statements that were made by the person who completed the forms" and were "offered to prove the truth of the matter[s] asserted, *i.e.,* that the account's owner was Walter Beede." This argument addresses two types of information: (1) that which is written or typed on the records; and (2) the signatures contained within the records. We assume, without deciding, that the information written and typed on the records is hearsay.

We next address the signatures contained in these records. While we question whether a signature can be considered a "statement" under the definition of hearsay, we recognize the overwhelming weight of authority from the federal courts, interpreting the identical federal rule of evidence, holding that it is. *See, e.g., United States v. Vigneau,* 187 F.3d 70 (1st Cir. 1999); *United States v. Cestnik,* 36 F.3d 904 (10th Cir. 1994). For purposes of this case, therefore, we proceed under the assumption that a signature can be considered hearsay unless it falls under an exception to the hearsay rule.

We find that the signatures contained within the checks and money orders constitute party-opponent admissions under New Hampshire Rule of Evidence 801(d)(2) and are therefore admissible. The defendant argues that since the records were admitted under the business records exception to the hearsay rule and the prosecution did not raise Rule 801(d)(2) below, it cannot be raised for the first time on appeal. We disagree, because "where [the] trial court reaches [the] correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." *Cohoon v. IDM Software,* 153 N.H. 1, 4 (2005); *see also State v. Berry,* 148 N.H. 88, 93 (2002) ("[E]ven though the trial judge did not conduct [the correct evidentiary] analysis ... its decision to admit the evidence reached the correct result and reversal is not warranted.").

A signature falls under the exception in Rule 801(d)(2) if it is otherwise authenticated such as through "independent evidence that the

writer was [the defendant]." *Vigneau*, 187 F.3d at 74-75. New Hampshire Rule of Evidence 902(9) provides that "[c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law" do not require "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility." Accordingly, the signatures contained within the checks and money orders, which are commercial paper, are self-authenticating under Rule 902(9) and therefore satisfy the above test to be admitted as an exception to the hearsay rule as a party-opponent admission. *See* N.H. R. Ev. 801(d)(2).

■ The State argues that the signatures on the business account agreement and the sole proprietorship resolution form also constitute admissions under Rule 801(d)(2) because there was sufficient independent evidence to prove the defendant had signed the records. We disagree. Upon review of the record, we can find no such evidence. The State argues that there were several records admitted without objection that contain the defendant's signature and that this was sufficient to prove that it was also the defendant's signature on the account agreement and the sole proprietorship resolution form. The record, however, does not reveal that such a comparison was ever made at trial by any witness. We find, therefore, that the signatures in these records do not meet the party-opponent admission exception under Rule 801(d)(2).

Redacting the statements and signatures contained in the business account agreement and sole proprietorship resolution form before admitting them would have cured this problem; however, since the trial court admitted the records in their entirety based erroneously upon the business records exception, this information was not redacted. However, as we discuss below, the admission of the statements and signatures on these records was harmless error.

*III. Bank Account Statements*

We next address whether the bank account statements were properly admitted as evidence under the business records exception to the hearsay rule.

Rule 803(6) excepts from the definition of hearsay:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian

or other qualified witness, . . . unless the source of information or the method of [or] circumstances of preparation indicate lack of trustworthiness.

■ Where a party seeks to admit business records under this exception that have been transferred from one business to another, the party must establish that the records were integrated into the second business's records and are "relied upon in [the] day-to-day operations" of the business into which they are subsumed. *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984), *cert. denied*, 469 U.S. 1213 (1985); *see also United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992).

■ The trial court heard the following testimony before admitting the account statements:

[Counsel:] Do you recognize [these] nine pages?

[Sanborn:] Yes, I do.

[Counsel:] Can you tell us what [they] are?

[Sanborn:] They're copies of Village Bank and Trust account statements in the name of Walter F. Beede d/b/a Jay Howland Realty.

[Counsel:] And did you have an opportunity to review the bank statements of Mr. Beede before coming to court today?

[Sanborn:] Yes.

There was no other evidence of integration. The trial judge overruled the defendant's objection to admission of these account statements and the records were admitted. We agree with the defendant that this testimony was insufficient to establish that LSB had integrated GVB's records and relied upon them. We further note that even if integration had been established, the balance of the foundational requirements of Rule 803(6) were not met. Accordingly, the trial court erred in admitting the account statements under the business records exception, and we can find no other hearsay exception that applies.

However, "[t]he admission of inadmissible evidence does not always require reversal." *State v. Hammell*, 155 N.H. 47, 51 (2007). The State argues that even if the account statements were inadmissible hearsay, their admission was harmless. We agree.

*IV. Harmless Error*

■ An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict. *State v. Barnes*, 150 N.H. 715, 717 (2004). The State bears the burden of proving that an error is harmless. *Id.* The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *Id.* In making this determination, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence itself. *State v. Pseudae*, 154 N.H. 196, 202 (2006).

In this case, evidence of the defendant's guilt was overwhelming; the bank account statements, and the information in the business account agreement and the sole proprietorship resolution form were merely cumulative in relation to the other evidence introduced at trial.

Howland testified that he had the sole authority to open bank accounts for JHE and JHR, and had never done so at GVB. The evidence contained seven checks and two money orders made out to JHE which Howland testified were never received by his business, although all such payments were supposed to be deposited into one of his accounts. Each check and money order bore a stamp showing it was deposited into the GVB account on a certain date. They also bore the following handwritten endorsement: "Jay Howland Ent." The defendant stipulated that Howland did not write those endorsements.

David Ames testified that he had personally handed a check to the defendant, in the amount of $31,325.80 and dated October 28, 1998, for the purchase of Lot 209 from JHE. Mary Adams testified that Steven LeBoeuf purchased a boat slip in December 1998, priced at $28,000, from JHE but that JHE never received the money. The drawers of the remaining checks at issue each testified that he or she wrote a particular check, that the check was written out to and intended for JHE, and all but one testified that the check was either mailed to the New Hampshire office or personally handed to the defendant. Howland testified that he never received these payments.

The two checks written from the GVB account contain the signature "Wally Beede," as well as the dates they were processed by the banks where they were deposited. When shown one of these checks, in the amount of $1,800 and made payable to the defendant's ex-girlfriend, she testified that she had endorsed and cashed the check and that the

signature on it appeared to be the defendant's. The accountant for the building supply company, to which the other check drawn on the account was made payable, testified that the check was received by his company as payment on an account opened by the defendant.

Given this evidence, any evidence of transactions shown on the GVB account statements was merely cumulative. Similarly, the admission of the information in the business account agreement and the sole proprietorship resolution form for purposes of proving that the defendant opened and maintained the account with GVB was cumulative because the jury had before it two checks written from this account and signed by the defendant. Had these records been excluded, the jury would still have had before it "uncontroverted and overwhelming evidence of the defendant's" guilt. *Id.* at 203. Therefore, any error the trial court may have made in admitting them in their entirety was harmless beyond a reasonable doubt.

We need not address the defendant's argument that the trial court erred when it sentenced him to concurrent three-year probation terms for the class A misdemeanors because the trial court granted the defendant's motion to amend his probation sentence to two years.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.