Strafford
No. 2009-280

THE STATE OF NEW HAMPSHIRE

v.

GEORGE REID

Argued: January 6, 2011
Opinion Issued: March 16, 2011

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*Lothstein Law Office, PLLC*, of Concord (*Theodore Lothstein* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, George Reid, appeals his conviction by a jury on two counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (Supp. 2003), and two counts of felonious sexual assault, *see* RSA 632-A:3 (Supp. 2003). He argues that the Trial Court (*Brown, J.*) erred when it allowed the State to admit a videotape of the victim's interview with police and when it denied his motion for a mistrial. We affirm.

The record reflects the following facts. In 2003, the defendant was living with the victim's grandmother. The victim, E.B., visited her grandmother and the defendant numerous times a week at their home, where they had a swimming pool and a hot tub. On at least one occasion, the defendant and E.B. were in the hot tub alone and the defendant did not have clothes on; the defendant told E.B. to come to him, pulled her bathing suit bottom down to her knees, and placed his penis between her buttocks. Occasionally, the victim also slept in the same bed with her grandmother and the defendant. On at least one occasion, the defendant pulled down E.B.'s pajama pants and put his penis between her buttocks. E.B. also told investigators that the defendant penetrated her vagina with his penis and his finger. On May 6, 2004, E.B. gave a videotaped interview with an investigator, Nancy Harris-Burovac, and described the incidents involving the defendant.

During the trial, which took place in January 2009, the State attempted to introduce the victim's videotaped statement as a recorded recollection.

The victim testified that she remembered giving the videotaped interview and that at the time of the interview her memory was better than it was at trial. She testified that she had viewed the videotape and did not remember some of the events that she described on the videotape. E.B. specifically testified that she did not remember any of the sexual assaults involving vaginal penetration, but that when she was interviewed she tried to tell the truth about "what happened with George." When defense counsel questioned the victim about some of the specific allegations, she was unable to testify to a memory of whether the assaults had occurred.

The trial court ruled that, with regard to the vaginal penetration charges, the victim had first-hand knowledge of the events, that she presently lacked sufficient memory of the event to testify fully and accurately, that the recorded statement was made at or near the time of the event when the witness had declared an accurate memory of the statement, and that the recorded statement accurately reflected the witness's knowledge. The State was then permitted to play an edited portion of the videotaped interview relating to the vaginal penetration charges.

On appeal, the defendant first argues that the trial court erred in allowing the State to introduce the victim's videotaped interview with an investigator under the recorded recollection exception to the hearsay rule. "We review the trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard." *State v. Beede*, 156 N.H. 102, 105 (2007). "Therefore, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case." *Id.*

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). Hearsay is inadmissible unless it falls within one of the specifically enumerated exceptions provided in the rules of evidence. *See* N.H. R. Ev. 802. To be admissible under the "recorded recollection" exception, a recorded statement must meet the following requirements:

> (1) the witness once had firsthand knowledge about the event; (2) the witness now lacks sufficient memory of the event to testify fully and accurately; (3) the recorded statement was made at or near the time of the event when the witness had a clear and accurate memory of it; and (4) the recorded statement accurately reflects the witness's knowledge.

*State v. Locke*, 139 N.H. 741, 743 (1995); *see* N.H. R. Ev. 803(5).

■ The defendant contends that the State did not satisfy the third and fourth prongs of the foundation for a recorded recollection. We disagree. The third prong requires that the recorded statement be made at or near the time of the event when the witness had a clear and accurate memory of it. The victim disclosed the incidents to her mother on April 22, 2004, and gave her taped interview on May 6, 2004. In *Locke*, we found that the trial court properly exercised its discretion in finding that the third prong was satisfied when a videotape of the victim's statement was made "within a few weeks of the disclosure of the incidents." *Locke*, 139 N.H. at 743-44. Here, the videotaped statement was made fourteen days after the disclosure of the incidents. At trial, the victim testified that when she made the videotaped statement she had a clear memory of the events. We find that the trial court was well within its discretion to find that the third prong of the recorded recollection exception was met.

■ The fourth prong requires that the recorded statement accurately reflect the witness's knowledge. The defendant argues that because the victim equivocated as to whether the incidents described in the videotaped interview actually took place, the State did not show that the statement accurately reflects the victim's knowledge.

> Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration . . . of factors indicating trustworthiness, or the lack thereof.

*United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir.), *cert. denied*, 510 U.S. 933 (1993). While the general rule is that the witness must confirm the accuracy of the recorded statement, "unless the witness has expressly repudiated it on the stand the trial judge may consider all of the circumstances in finding the requisite confirmation, including the demeanor of the witness in court . . . as well as the conditions under which the out-of-court statement was made." *Pickett v. United States*, 822 A.2d 404, 406 (D.C. 2003).

■ Here, the victim never repudiated the accuracy of the taped portion of the statement that was played for the jury. At trial, she could not remember the events described in the video at all and was unable to provide any information to either the State or defense counsel as to the accuracy of the recorded statements. The trial court was in the best position to determine the admissibility of the recording based upon a consideration of

the factors indicating the trustworthiness of the statement. The trial court had the opportunity to observe testimony from the victim witness on multiple occasions regarding her memory of the events discussed in the video. The trial court also viewed the video in advance of showing it to the jury and considered the demeanor of the victim while making the statements. In ruling on the admissibility of the video, the trial court found that "[t]he recorded statement was made at or near the time of the event, when the witness had declared an accurate memory of it and of the recorded statement . . . . The recorded statement accurately reflects the witness' knowledge." "[T]o the extent the finding reflects the court's firsthand observations of the witness's demeanor, it is deserving of considerable deference." *Locke*, 139 N.H. at 743.

Additionally, the record supports a finding that the videotaped statement accurately reflected the victim's knowledge of the abuse at the time she made the statement. As previously mentioned, the interview occurred two weeks following the disclosure of the incidents. At trial, the victim testified that she remembered meeting with "Nancy" for the interview to "talk to her about what happened, what George had done." She testified that her memory at the time of the interview was better than it was at present. She testified that she had tried to forget the incidents in the intervening years "so it [didn't] worry [her]," but that when she spoke to the investigator on the videotape, she tried to tell her everything that happened with the defendant. Finally, the victim testified that when she spoke with the investigator, she was telling her the truth about the incidents that occurred with the defendant. Given this testimony, we find that the trial court properly exercised its discretion in finding that the fourth prong of the recorded recollection exception was met.

█ The defendant also argues that the admission of the videotaped interview violated his right to confrontation under the Sixth Amendment to the Federal Constitution. The defendant contends that because E.B. claimed to have no memory of the charged events, she was not available for cross-examination. We have previously held that the admission of a witness's prior statement does not violate the federal right to confrontation if the witness is present for cross-examination, even if the witness has no recollection of the events. *State v. Legere*, 157 N.H. 746, 755-56 (2008), *cert. denied*, 129 S. Ct. 1623 (2009). The defendant urges us to overrule our decision in *Legere* and hold that a witness who cannot remember the events described in a prior statement is not available to defend or explain that statement as required by the right of confrontation. We find no reason to overrule our decision in *Legere*, and, because it controls this case, we find that the defendant's right to confrontation was not violated.

Finally, the defendant argues that the trial court erred in not granting a mistrial after the State introduced evidence of the defendant's silence in violation of the Fifth Amendment and Part I, Article 15 of the State Constitution. The defendant also contends that the manner in which the evidence was elicited constituted prosecutorial overreaching requiring a mistrial.

During the direct examination of Officer Patrick Emerson, the prosecutor asked him whether during his investigation he spoke to persons who may have had relevant information. Officer Emerson responded, "I did. I subsequently ended up interviewing Benjamin [B.], who is [E.B.'s] grandfather, his wife Alice. I interviewed Sally Ann [B.], and I also attempted to interview Lynn [B.] and Mr. Reid." A few questions later the prosecutor asked, "You indicated that you wanted to, or tried to talk to Mr. Reid; is that correct?" and Emerson responded, "It's correct." The defendant objected and a bench conference ensued.

At the bench, defense counsel argued that the previous question and answer constituted an improper comment on the defendant's right to remain silent in violation of *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976). The prosecutor explained that he asked the question because he did not want defense counsel to claim during closing argument that the State had conducted an inadequate investigation. The trial court ruled that it would "rather not have [the State] go there," and insisted that defense counsel was "not going to talk about shoddy work." Defense counsel indicated that he would likely move for a mistrial "in light of a prior ruling from [the trial court] barring this question to this very witness in this very subject matter." The trial court allowed the examination of Emerson to continue and heard the defendant's motion during the afternoon recess.

During the motion hearing, defense counsel argued that not only was the line of questioning a violation of the defendant's constitutional right to remain silent, which required a mistrial, but because the prosecutor had been on notice that such a line of questioning was inadmissible, the question itself constituted prosecutorial misconduct requiring dismissal with prejudice. Before the prosecutor responded to the motion, the trial court noted that it "[did] not find any prosecutorial [mis]conduct [had] occurred in front of [the trial court] on the examination of [Officer Emerson]."

The trial court denied the defendant's motion for a mistrial, finding that "a mere reference by a witness to a defendant's silence . . . does not necessarily require a mistrial." The court ruled that "a curative instruction is appropriate and will cure any problem we'll have." Defense counsel elected not to have the court read the curative instruction because "it [would] draw undue attention to a Constitutional infirmity."

██ We first address the defendant's claims under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 232-33 (1983). "Mistrial is the proper remedy only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions." *State v. Neeper*, 160 N.H. 11, 15 (2010) (quotation omitted). "Because the trial court is in the best position to gauge the prejudicial nature of the testimony being challenged, the court's ruling on a motion for mistrial will not be overturned absent an unsustainable exercise of discretion." *State v. Gibson*, 153 N.H. 454, 459-60 (2006). A defendant's pre-arrest silence may be used to impeach his credibility, but the use of pre-arrest silence in the State's case-in-chief is unconstitutional. *State v. Remick*, 149 N.H. 745, 747 (2003). "A mere reference by a witness to a defendant's silence, without more, however, does not necessarily require a mistrial." *State v. Spaulding*, 147 N.H. 583, 587 (2002).

██ We first review whether the reference to the defendant's silence could be cured with a jury instruction. "An instruction to disregard the reference to silence is generally sufficient in the absence of prosecutorial misconduct or comment that cannot be cured by a cautionary jury instruction." *Id.* at 587. Here, the line of questioning referring to the officer's attempts to interview the defendant was cut off immediately after the witness confirmed an attempt to interview the defendant. The trial court found that the question had been stopped "before it got out of the barn." The question here, whether the officer attempted to interview the defendant, standing by itself, is not a sufficiently clear reference to the defendant's invocation of his right to remain silent so as to substantially prejudice him to the level requiring a mistrial. The trial court properly exercised its discretion in finding that reference to the defendant's silence could be cured with a cautionary instruction. The trial court offered to give a cautionary instruction, but defense counsel rejected the offer. "This may well have been a sensible decision, but it was a decision that does not now entitle the defendant to the drastic and wholly unnecessary alternative of declaring a mistrial." *State v. Cote*, 126 N.H. 514, 531 (1985).

██ We next address the defendant's assertion that the prosecutor's question to Officer Emerson constituted prosecutorial misconduct. "A prosecutor's impermissible comment may require a new trial either because the misconduct so poisoned the well that the trial's outcome was likely affected or the breach was so egregious that reversal becomes a desirable sanction to forestall future prosecutorial trespasses." *State v. Turgeon*, 137 N.H. 544, 546-47 (1993) (quotations omitted). The defendant points out that the first trial in this case resulted in a mistrial and asserts

that because in the prior trial, the trial court ruled that the prosecutor's line of questioning regarding Officer Emerson's attempt to interview the defendant was impermissible, any similar attempt in the second trial was prosecutorial misconduct. During the defendant's motion for a mistrial, the transcript of the questioning from the first trial was read into the record:

> Question: "And in all, do you have any idea of how many interviews you might have conducted in the course of this case?"

> Answer: "I interviewed Sally Ann [B.], the aunt to the victim, I interviewed Alison and Benjamin [B.], the biological father of E.B., and her step-grandmother, and I believe that's it."

> Question: "Okay. Would it be your preference to interview some-one who was an alleged suspect in an investigation like this?"

> Answer: "Absolutely.["]

> Question: ["]Did you make any efforts to sit down [with] Mr. Reid and talk to him?"

> Answer: "Later in the investigation, I made attempts to contact him."

At that point in the first trial, defense counsel objected and the prosecutor explained to the trial court where the line of questioning was headed. The trial court ruled that it "[didn't] want to go down that road," and sustained the objection.

During the first trial, the inquiry into Officer Emerson's attempts to interview the defendant was initiated by the prosecutor, who then asked follow-up questions regarding the interview attempts. However, in this case, the officer made reference to his attempt to interview the defendant without being asked by the prosecutor, and the prosecutor later asked him to confirm his statement in an attempt to diffuse any claim of inadequate police work. This line of questioning ceased immediately upon defense counsel's objection and was not explored again for the rest of the trial. We cannot say that the prosecutor's question "so poisoned the well that the trial's outcome was likely affected or [that] the breach was so egregious that reversal [is] a desirable sanction to forestall future prosecutorial trespasses." *Turgeon*, 137 N.H. at 546-47 (quotations omitted). The trial court was well within its discretion to find that there was no prosecutorial misconduct committed by the State.

Because the State Constitution is at least as protective as the Federal Constitution under these circumstances, *see State v. Anderson*, 141 N.H. 168, 169 (1996), we reach the same result under the Federal Constitution.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.