**Ronnie IKEMIRE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 42A01–0510–CR–473.

Court of Appeals of Indiana.

Aug. 18, 2006.

Transfer Denied Oct. 3, 2006.

Stephen P. Murphy, Jr., Murphy & Murphy, LLC, Vincennes, IN, Attorney for Appellant.

Steve Carter, Attorney General Of Indiana, Arthur Thaddeus Perry, Special Deputy Attorney General, Indianapolis, In, Attorneys for Appellee.

## OPINION

MAY, Judge.

Ronnie Ikemire appeals his conviction after a jury trial of dealing in a controlled substance, a Class B felony. The evidence was sufficient to support Ikemire's conviction. Ikemire's trial was held more than 70 days after he was arrested, but he was not entitled to discharge under Criminal Rule 4(B) because he was at least partially at fault for its continuance. He was not entitled to a "mere presence" instruction as the evidence presented at trial did not support such an instruction, and the hearsay objection made by the State was properly sustained. We affirm the trial court in all respects.

### FACTS AND PROCEDURAL HISTORY

On July 26, 2003, Officer Grove of the Vincennes Police Department responded to a dispatch reporting a strong odor in the 800 block of Tenth Street in Vincennes. He determined the odor was coming from a house at 809 Tenth Street. The house had an enclosed front porch. When Officer Grove opened the porch door, the odor increased significantly and his eyes became irritated. He knocked on the door several times and identified himself as a police officer, but received no response.

Neighbors told him the house was vacant. Officer Grove contacted police headquarters, advised them he believed the odor was ether, and requested backup. Officer Halter arrived and also smelled ether. Officers determined there was no

electricity and no running water in the house.

Police officers knocked on the doors and windows numerous times. Officer Halter used a P.A. system and announced they were police. Officer Halter then peered through a back window and saw Ikemire walking from the back of the house to the front. Officer Grove looked through a window and saw a lantern with an open flame. Because of the danger of an explosion, police forced the back door open with a battering ram at around 10:30 p.m.

Officers found Ikemire lying on a couch in the living room with his eyes closed. Officer Grove asked Ikemire to put his hands where he could see them, and Ikemire responded that he was sleeping. Officer Grove said, "You can't be sleeping if you're telling me you're sleeping." (Tr. at 293.) A search of the house revealed a female hiding inside a duffle bag with clothes stacked on top of it.

Officers complained the fumes irritated their eyes and made them cough. Officer Halter testified the fumes were among the most severe he had encountered at methamphetamine labs. Officers entered the basement of the house and found fumes coming from a five-gallon plastic bucket with a bubbling, pink liquid in it. The liquid smelled like solvent. A specialized Indiana State Police lab team, the Clandestine Drug Lab Team, removed the bucket and some other items from the residence.

## DISCUSSION AND DECISION

### 1. *Sufficiency of the Evidence*

█ Ikemire alleges there was insufficient evidence he manufactured methamphetamine, as there was no evidence of certain stages of the methamphetamine manufacturing process.

█ When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses. *Wright v. State*, 828 N.E.2d 904, 905–06 (Ind.2005). We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 906. It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, *id.*, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

Indiana State Police Officer James Dotson, an experienced crime scene investigator and member of the Clandestine Drug Lab Team, examined the house the same day Ikemire was found there. He testified that not all steps of methamphetamine manufacturing are done at the same time or at the same place. He testified that many items used in manufacturing methamphetamine were found at the house, including particle masks, a box of salt, glassware with a solvent odor, pop bottles that were indicative of HCL generators and contained residue, a five-gallon plastic bucket containing a liquid that smelled like a solvent, a twelve-ounce bottle of acid, a plastic bottle cut in half, a box containing coffee filters, pie plates that could be utilized to dry methamphetamine, a latex glove, a coffee filter with residue, a square of aluminum foil, and an alkaline substance, either ammonia or anhydrous ammonia. He testified the above items could be used in the methamphetamine manufacturing process. Officer Dotson testified items found in the basement of the house were indicative of an abandoned methamphetamine lab. He characterized what he found as "[i]f you baked the chocolate cookies and at the end of the process and you throw everything in the trash can,

that's basically what I found." (Tr. at 419.)

Other facts and circumstances support the jury's verdict. Officers attempted for over an hour to rouse anyone in the house, resorting to using a P.A. system and eventually breaking down a door. While the officers were outside the house, they heard people running up and down stairs. Ikemire was seen walking from the back to the front of the house. Officers testified the odor inside the house caused eye irritation and coughing. When they entered the house, Ikemire was lying on the couch and said he was sleeping.

Ikemire's allegation of error amounts to a request that we reweigh the evidence and judge the credibility of the witnesses. This we will not do. *Haviland v. State,* 677 N.E.2d 509, 516 (Ind.1997), *reh'g denied.* There was ample evidence to support Ikemire's conviction.

### 2. *Discharge under Criminal Rule 4(B)*

■ Ikemire filed his Motion for Early Trial on August 26, 2003 and trial was set for October 21, 2003. The State filed its Pretrial Witness and Exhibit List and Supplemental Discovery on October 14, 2003. On October 16, 2003, Ikemire filed his Motion to Exclude Evidence or in the Alternative Motion to Continue Jury Trial with Resulting Delay Attributable to the State. The trial court heard the pending motions on October 17, 2003, and found both Ikemire and the State had failed to comply with its discovery order. It ordered the case continued and found the delay attributable to both sides.

Ikemire argues his failure to file a notice of discovery compliance did not delay the trial. However, the trial court found the trial had to be continued, at least partially as a result of Ikemire's failure. We review *de novo* a trial court's denial of motion to dismiss pursuant to Ind. Criminal Rule 4(B). *Kirby v. State,* 774 N.E.2d 523, 530 (Ind.Ct.App.2002), *reh'g denied, trans. denied* 792 N.E.2d 33 (Ind.2003). Neither the State nor Ikemire complied with the trial court's August 7, 2003 order establishing discovery deadlines. We cannot say that the trial court erred when it assessed the delay caused by the continuance of the October 21, 2003 trial date to both parties. Ikemire was not without fault for that delay, and the trial court did not err in denying his motion to dismiss.

### 3. *"Mere Presence" Instruction*

■ Ikemire tendered the following instruction, which the court declined to give:

During the course of this trial, evidence was presented to you that brought into issue the Defendant's participation in the crime he is charged with committing. Both the State of Indiana and the Defendant brought forth evidence for your consideration as to the Defendant's participation.

The mere presence at the scene of the crime, with nothing more, is insufficient to sustain a conviction for participation in the crime. However, presence at the scene in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction.

(App. at 76.)

■ We review for an abuse of discretion a trial court's decision not to give a tendered jury instruction. *Forte v. State,* 759 N.E.2d 206, 209 (Ind.2001). We consider whether the instruction correctly states the law, is supported by evidence in the record, and is covered in substance by other instructions that were given. *Bradley v. State,* 770 N.E.2d 382, 387 (Ind.Ct. App.2002), *trans. denied* 783 N.E.2d 696 (Ind.2002).

Even if Ikemire's instruction is a correct statement of the law, it is not supported by the evidence in the record. Ikemire was more than "merely present" at the scene. For at least an hour, while police pounded on doors and windows and announced their presence, Ikemire walked around inside a house filled with highly irritating fumes, all the while failing to respond to the police. When police entered the house, he pretended he was sleeping. We cannot say, in light of that testimony, that the evidence supported this instruction. The trial court did not abuse its discretion in declining this instruction.

### 4. *Hearsay Objection*

■ We will reverse a trial court's hearsay ruling for an abuse of discretion only, and we will affirm the ruling on any legal basis apparent in the record. *Lampitok v. State*, 817 N.E.2d 630, 639 (Ind.Ct. App.2004), *reh'g denied, trans. denied* 831 N.E.2d 739 (Ind.2005). The following exchange occurred at trial:

> [Defense Counsel]: And Mr. Shatto, how was your answer incorrect?
>
> [Officer Shatto]: At the jail I evidently did ask her about all the materials that was located in the house that was common in the use of manufacturing methamphetamine.
>
> [Defense Counsel]: And what did you learn?
>
> [State]: Objection Your Honor. He's trying to get hearsay in a different way.
>
> [Court]: Yeah, I think you're right. Sustained.
>
> [Defense Counsel]: Were you able to learn from your question of Mrs. Leffler, who was responsible for manufacturing methamphetamine at that location if, in fact, that was what was going on?

> [Officer Shatto]: No, she didn't say who was responsible for it.

(Tr. at 339.)

Ikemire argues the trial court should not have sustained the State's hearsay objection, as his question did not ask for hearsay. We disagree.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Ikemire did not ask specifically what Ms. Leffler said, but his question as to what the witness "learned" from her would have elicited the same hearsay response. There was no error.

Affirmed.

SULLIVAN, J., and BAKER, J., concur.