Rockingham
No. 2012-214

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW TABALDI

Argued: May 9, 2013
Opinion Issued: October 1, 2013

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*James B. Reis*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. The defendant, Matthew Tabaldi, appeals his convictions, following a jury trial, for the sale of a narcotic drug (cocaine), *see* RSA 318-B:2, I (2011); possession of narcotic drugs (crack cocaine and cocaine), *see id.*; felon in possession of an electronic defense weapon, *see* RSA 159:21 (2002); and receiving stolen property (a firearm), *see* RSA 637:7 (2007). He argues that the Superior Court (*Lewis*, J.) erred by: (1) denying his motion to strike a prospective juror; (2) denying his motions to dismiss the possession of an electronic defense weapon and possession of crack cocaine charges; and (3) admitting certain evidence over his objection. We affirm all of the defendant's convictions except his conviction for being a felon in possession of an electronic defense weapon. We reverse that conviction with prejudice because we conclude that the evidence was insufficient to convict him of that charge. *See State v. Gordon*, 161 N.H. 410, 418 (2011) ("[I]f the evidence was insufficient to support the conviction, the Double Jeopardy Clauses of both the New Hampshire and United States Constitutions . . . preclude a new trial.").

## I. Background

The jury could have found the following facts. On March 25, 2009, Heather Taylor was the target of a drug investigation conducted by the New Hampshire Police Narcotics Investigation Unit. The police suspected that Taylor was transporting large quantities of heroin and cocaine from Massachusetts into New Hampshire. The police planned a "controlled buy."

In a controlled buy, the police use a confidential informant (CI) to purchase drugs from a target using paper currency that has been documented by the recording of the bills' serial numbers (also known as "buy money"). In a controlled buy, officers search the CI before and after sending him or her to purchase the drugs to ensure that the CI does not have unaccounted-for money or contraband. Officers also conduct surveillance of the CI and the target during the investigation.

The police planned for a female CI to purchase drugs from Taylor on March 25. The plan was for the CI to go to Taylor's residence in Rochester, accompany her to Massachusetts, and then return with her to New Hampshire. At approximately 9:00 a.m., State Police Trooper Bryan Trask, Sergeant Ellen Arcieri, and a detective from the Rochester Police Department met with the CI. They searched the CI and her belongings and vehicle, and found no money or contraband. Trask then supplied the CI with $300 in documented bills (the buy money).

At 11:40 a.m., the CI drove to Taylor's residence in Rochester, and police officers followed. Officers observed the CI enter the residence, where she remained for between sixty and ninety minutes. While the CI was inside the residence, however, the target of the investigation changed from Taylor to the defendant. The CI and Taylor left Taylor's residence and drove together to a residence in North Hampton that the defendant shared with Kenneth Vaillancourt. Surveillance units followed.

At approximately 2:00 p.m., the CI and Taylor arrived at the North Hampton house. Vaillancourt was at work. Approximately forty-five minutes after entering the house, the CI exited alone, got into her car, and drove directly to a prearranged meeting place. There, she gave Trask a small plastic baggie containing cocaine. After receiving the cocaine, officers searched the CI, her vehicle, and her belongings for other contraband, and again found none. She no longer had the buy money.

Thereafter, the defendant and Taylor emerged from the residence and drove away in a gray BMW. The defendant was driving and Taylor was sitting in the front passenger's seat. Officers then conducted a motor vehicle stop, took the defendant and Taylor into custody, and transported them to the police station. Trask applied for warrants to search the defendant, Taylor, and the BMW.

Before the warrants were issued, Taylor identified certain items in the BMW belonging to her, including a green and purple backpack on the front passenger's side floor, a purse on the front passenger's seat, and a black backpack in the trunk. She consented to a search of those items as well as her person. Officers found nothing of significance in the backpacks, but in the purse they found crack cocaine pipes, brass knuckles, lighters, scissors,

a syringe, a first aid kit, and a digital scale. There was testimony at trial that the buy money was found on the defendant's person.

Upon executing a search warrant for the BMW, officers found a black bag under the rear passenger's seat. The bag's contents — including laptop computers with content linked to the defendant, mail addressed to the defendant, and a notebook entitled "Matthew Tabaldi's usernames and passcodes" — indicated that the bag belonged to the defendant. Other items in the bag included: a ledger, plastic baggies, a white powder used as a cutting agent to dilute the strength of drugs, a weight for calibrating a scale, and a small torch commonly used for quickly heating drugs. The bag also contained a device police referred to as a "taser." Additionally, officers discovered a black case under the driver's seat, which contained drug paraphernalia, including spoons, plastic tubing, copper mesh, and a hypodermic needle. Officers also discovered a digital scale in the pocket of a canvas guitar bag behind the driver's seat, crack cocaine pipes in a black canvas bag on the front passenger's seat, and another crack cocaine pipe in the pocket of a jacket on that seat. Finally, a Newport cigarette box containing crack cocaine was found between the driver's seat and the center console.

Officers also executed a search warrant at Vaillancourt's residence. In the defendant's bedroom they found, among other things, an open box of plastic sandwich bags and a white powdered substance that later tested positive for cocaine. On August 20, 2009, the defendant met with Trask and Arcieri at the State Police barracks in Epping, and told them that he dealt drugs. During a recorded telephone call with Taylor on October 2, 2011, the defendant discussed the events of March 25 with her saying, "I had to wait for a girl and make a sale." Taylor responded, "Don't be hating. Don't be hating." The defendant responded, "Hating? I'm doing a long time for this."

## II. Discussion

### A. Motion to Strike Juror

During jury selection, the venire was advised that the defendant was a convicted felon. A prospective juror, H.S., thereafter explained to the trial court, "[H]earing that a gentleman in the defendant's chair is a convicted felon just makes me a little — somewhat concerned for the charges brought against him." When asked if she would be able to put her concern aside, the juror indicated, "I will do my best." The trial court then engaged in the following exchange with H.S.:

Court: And you're going to hear about this, but you're going to need to expressly and affirmatively be able to say to me that's — I'm not trying this case on the basis of someone's reputation or his past.

H.S.: Yes, sir.

Court: Whether or not the State has proven the case here, beyond a reasonable doubt.

H.S.: Okay.

Court: So you need to be focused in on the evidence here.

H.S.: Yes, sir. Okay.

Court: You can do that?

H.S.: Yes, sir.

Defense counsel moved to strike H.S. for cause on the basis of her "reservations." The trial court denied the motion. H.S. was later stricken following the parties' use of their peremptory challenges. *See* RSA 606:3, III (2001); *see also* RSA 606:4, III (2001).

The defendant argues that the trial court erred in denying his motion to strike H.S. for cause, and that the error violated his rights to an impartial jury under the Sixth Amendment to the United States Constitution and Part I, Articles 15, 17, 21, and 35 of the New Hampshire Constitution. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ Part I, Article 35 of the State Constitution provides, "It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." "This provision for judicial impartiality is applicable as well to jurors." *State v. Town*, 163 N.H. 790, 793 (2012). "[I]t is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." *Id.* at 793-94 (quotation omitted).

■ "Generally, a juror is presumed to be impartial." *Id.* at 794. "A juror is considered impartial if the juror can lay aside her impression or opinion and render a verdict based on the evidence presented in court." *Id.* (quotation omitted). "When a juror's impartiality is questioned, however, the trial court has a duty to determine whether the juror is indifferent." *Id.* "If it appears that any juror is not indifferent, he shall be set aside on that trial." RSA 500-A:12, II (2010); *Town*, 163 N.H. at 794. "Indifference or impartiality is not a technical conception. It is a state of mind." *State v. Weir*, 138 N.H. 671, 673 (1994) (quotation omitted). The trial court's determination of the impartiality of the jurors selected is essentially a

question of demeanor and credibility and, thus, is entitled to special deference. *Id.* at 673-74. "We will not disturb the trial court's ruling absent an unsustainable exercise of discretion or a finding that the trial judge's decision was against the weight of the evidence." *Town*, 163 N.H. at 794.

In *Town*, we considered an argument similar to that presented here. The defendant in *Town* was accused of aggravated felonious sexual assault. *Id.* at 791. A potential juror expressed concerns regarding her ability to be impartial. *Id.* at 794. The juror revealed that she had been the victim of sexual assault and also stated, "I think I need to do this." *Id.* (quotation omitted). She then reiterated that she was "not sure" whether she could be fair and impartial. *Id.* (quotation omitted). Although the trial court twice asked her if she could put aside her personal circumstances and judge the case based solely upon the evidence presented, each time she merely indicated that she would "try." *Id.* (quotation omitted). We reversed the defendant's conviction, concluding that the trial court unsustainably exercised its discretion in finding that the juror was qualified to sit on the jury. *Id.* at 791, 795. We held that the juror's "indication that she would 'try' to be fair and impartial, without more, was insufficient to establish that she could lay aside her impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 794 (quotation omitted).

■ This case is similar to *Town* in that H.S. initially stated that she would "do her best" to put aside her concerns regarding the defendant's status as a convicted felon. Here, however, the trial court probed further, asking a number of questions, including whether H.S. would "affirmatively be able to say" that she would "not try[ ] this case on the basis of someone's reputation or his past." H.S. responded, "Yes, sir." On this record, we conclude that the trial court satisfied its duty to determine whether H.S. was impartial and that the juror's responses supported the trial court's denial of the defendant's motion to strike H.S. for cause. Having concluded that the trial court did not err when it determined that H.S. was impartial, we need not address the defendant's arguments based upon his assumption that the juror was not impartial. Because the State Constitution provides at least as much protection as the Federal Constitution on this issue, we reach the same conclusion under the Federal Constitution. *See Weir*, 138 N.H. at 673.

### B. Sufficiency of the Evidence

■ The defendant argues that the trial court erred when it denied his motions to dismiss for insufficient evidence the felon in possession of an electronic defense weapon and possession of crack cocaine charges. "To prevail upon a sufficiency of the evidence challenge, the defendant must prove that no rational trier of fact, viewing all of the evidence and all

reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Trebian*, 164 N.H. 629, 632 (2013). "When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt." *Id.* "Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation." *Id.* "The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all such *rational* conclusions based upon the evidence have been excluded." *Id.* We review the entire trial record because the defendant chose to present evidence after the trial court denied his motions to dismiss. *See State v. Dion*, 164 N.H. 544, 548 (2013). Even though a defendant is not required to present a case, if he chooses to do so, he takes the chance that evidence presented in his case may assist in proving the State's case. *Id.*

### 1. *Felon in Possession*

To convict a defendant of being a felon in possession of an electronic defense weapon, the State must prove, beyond a reasonable doubt, that: (1) the defendant was a convicted felon; and (2) he possessed "an electronic defense weapon away from the premises where he resides." RSA 159:21. RSA 159:20, I (2002) defines an electronic defense weapon as "an electronically activated non-lethal device which is designed for or capable of producing an electrical charge of sufficient magnitude to immobilize or incapacitate a person temporarily."

The defendant stipulated at trial that he was a convicted felon. He contends that the evidence was insufficient because the State failed to prove, beyond a reasonable doubt, that the device found in his possession was "designed for or capable of producing an electrical charge of sufficient magnitude to immobilize or incapacitate a person temporarily." We agree.

The only evidence at trial regarding the capability of the device was Trask's testimony. Over the defendant's objection, Trask testified that, while searching the defendant's black bag, he found a device that he described as a taser. He then testified:

> Q: And that, just so we're clear, . . . you yourself carry a Taser, I imagine?
>
> A: Yes.
>
> Q: As part of your work?
>
> A: Yes.
>
> Q: Okay. That obvious — what's in front of us here . . . obviously differs from the weapon you carry.

A: Correct.

Q: Okay. But when you characterized it as a Taser, did you take a look at it [at] all on the day you discovered it — on the day you found it back on March 25th of 2009.

A: I did. I actually activated it.

Q: What happened when you activated it?

A: When I activated it, there were blue sparks that arched between the two electrodes . . . . Depending on [how] you use it, there would be electricity that would flow from one side to the other side.

Q: And you could see that?

A: I could see that.

Q: Okay.

A: And you could hear the crackling of the electricity going back and forth.

Q: Okay. And how does it appear to be powered?

A: By a nine-volt battery.

Q: Okay. And this was obviously some time ago that this was discovered. As far as you're aware, is the battery still working or is it out?

A: No, it's dead at this point.

The State presented no other evidence to prove the charge.

This testimony was insufficient, as a matter of law, to establish that the taser Trask discovered was designed for, or capable of, producing the requisite electrical charge. Trask's testimony that the device was a "taser" from which he observed "sparks" and could hear "the crackling of electricity," even when viewed in the light most favorable to the State, was insufficient to allow a rational juror to conclude, beyond a reasonable doubt, that the device was designed for or capable of the requisite electrical charge. *Cf. People v. Racy*, 56 Cal. Rptr. 3d 455, 460 (Ct. App. 2007) ("[T]he effects of a stun gun, unlike the effects of more typically used weapons such as knives or handguns, are matters beyond the experience of average jurors.").

Because the evidence was insufficient to establish, beyond a reasonable doubt, one of the elements of the charge of felon in possession of an electrical defense weapon, we reverse, with prejudice, the defendant's conviction on that charge. *See Gordon*, 161 N.H. at 418.

## 2. *Possession of Crack Cocaine*

■ The possession of crack cocaine charge alleged that the defendant knowingly "had in his possession, or under his control, . . . a quantity of the narcotic drug crack cocaine." To gain a conviction for possession of a controlled substance, the State must prove beyond a reasonable doubt that a defendant: (1) had knowledge of the nature of the drug; (2) had knowledge of its presence in his vicinity; and (3) had custody of the drug and exercised dominion and control over it. *State v. Smalley*, 148 N.H. 66, 68 (2002). The defendant challenges only the State's proof that he had custody of the crack cocaine.

■ When a drug is not found in a defendant's physical possession, the State must prove constructive possession. *Id.* "Constructive possession can be inferred from incriminating statements or circumstances linking the defendant to the drugs, such as personal possessions found near the drugs." *Id.* at 69 (quotation omitted). "[C]onstructive possession of drugs need not be exclusive." *Id.* (quotation omitted).

The defendant argues that the evidence was insufficient to establish that he constructively possessed the crack cocaine. Specifically, he argues that "the evidence could have just as likely supported the conclusion that the cigarette box, and thus the crack cocaine, belonged to Taylor." Thus, he contends, the evidence was insufficient because it failed to exclude all rational conclusions except guilt. *See Trebian*, 164 N.H. at 632.

Although the defendant also intimates that the evidence could also have supported a conclusion that the cigarette box belonged to Vaillancourt, he does not develop this argument. Nor does the record establish that he raised this argument in the trial court. Accordingly, we do not consider it.

■ ■ We conclude that a rational juror, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, could have found, beyond a reasonable doubt, that the defendant constructively possessed the crack cocaine. The crack cocaine was found in a location over which the defendant could exercise dominion and control. He was the driver of the vehicle; the cigarette box was found between the driver's seat and the center console. Additionally, several of his possessions were located near the crack cocaine, including his black bag containing drug paraphernalia. "[P]ersonal possessions of the defendant [found] in close proximity to the controlled substance may provide a sufficiently close nexus between the defendant and the substance to allow the jury to infer possession." *Smalley*, 148 N.H. at 69 (quotation omitted).

Although the defendant argues that the crack cocaine could have belonged to Taylor, "the jury could have drawn reasonable inferences based

upon the evidence presented and concluded that [it] belonged to the defendant." *State v. Duran*, 162 N.H. 369, 373 (2011); *see United States v. Howard*, 687 F.3d 13, 20-21 (1st Cir. 2012) (it was within jury's prerogative to choose which inference regarding constructive possession was most worthy of belief). The State did not have to establish that the defendant had *exclusive* constructive possession of the crack cocaine. *See Smalley*, 148 N.H. at 69.

Here, viewing the evidence in the light most favorable to the State, we conclude that a rational juror could have reasonably found, beyond a reasonable doubt, that the defendant constructively possessed the crack cocaine. Accordingly, we hold that the evidence was sufficient to convict the defendant of the possession of crack cocaine charge.

### C. Evidentiary Issues

#### 1. Buy Money

The defendant challenges on both evidentiary and State and Federal Confrontation Clause grounds the admission of Trask's testimony that the buy money was found on the defendant's person. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. He argues that the evidence was inadmissible hearsay, *see* N.H. R. EV. 801, and that its admission violated his rights to confront witnesses against him guaranteed by the Federal and State Constitutions.

We first address the defendant's arguments under the New Hampshire Rules of Evidence. *See State v. Hodgkiss*, 132 N.H. 376, 379 (1989) (We follow strong policy not to address constitutional arguments unless required.). "We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion." *State v. Munroe*, 161 N.H. 618, 626 (2011). "To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.*

The defendant challenges the following testimony by Trask:

Q: And in particular, did you come in to contact with money that you understood to have been taken off the Defendant's person following that stop?

A: Yes, I did.

Q: Okay. And how much currency was that?

A: It was $582 at the time on his person.

Q: Was any portion of that currency the same money that had been given to the CI?

A: Yes, it was. The 300 that I had serialized were — was located [on] him. It was part of that five hundred —

. . . .

Q: So of that . . . 582, 300 of it was the money that you had given to the CI and had recorded the serial numbers?

A: Yes.

. . . .

Q: So you didn't take any property from [the defendant] yourself?

A: I did not.

Q: You testified yesterday that you were given money that was taken from [the defendant]?

A: Yes.

Q: Okay. So that means somebody told you that they did that?

A: Correct.

The defendant contends that this testimony constitutes hearsay. We agree. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801. A statement that is not offered to prove the truth of the matter asserted is not hearsay. *See id.*; *see also State v. Pelletier*, 149 N.H. 243, 253 (2003). "Hearsay is not admissible except as provided by [the rules of evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority." N.H. R. Ev. 802.

 Trask's testimony that he "understood" that the buy money had been taken from the defendant constitutes inadmissible hearsay. His testimony introduced, indirectly, an out-of-court statement by another declarant that the buy money was found on the defendant's person. This out-of-court statement was introduced for the truth of what it asserted — that, in fact, the buy money was found on the defendant's person. "If the purpose of testimony is to use an out-of-court statement to prove the truth of facts stated, the hearsay objection cannot be eliminated by eliciting the content of the statement in an indirect form." 2 MCCORMICK ON EVIDENCE § 249, at 196 (Kenneth S. Broun ed., 7th ed. 2013). "Thus, when offered as proof of the facts asserted, testimony regarding 'information received' by the witness and the results of investigations made by other persons are properly classified as hearsay." *Id.* at 196-97; *see United States v. Baker*, 432 F.3d 1189, 1209 (11th Cir. 2005) (investigator's statement about what he learned upon arriving at shooting scene was inadmissible hearsay); *United States v. Hernandez*, 750 F.2d 1256, 1257 (5th Cir. 1985) (testimony that Federal Drug Enforcement Administration was made aware that defen-

dant was a drug smuggler constituted inadmissible hearsay); *Ikemire v. State*, 852 N.E.2d 640, 644 (Ind. Ct. App. 2006) (asking police officer to testify about what he "learned" after questioning a witness elicited a hearsay response). Accordingly, although Trask's testimony introduced the out-of-court statement indirectly, it, nonetheless, constitutes inadmissible hearsay.

Trask's testimony that someone told him that the buy money was found on the defendant is also inadmissible hearsay. The statement was made by someone other than Trask (the testifying declarant) and was offered to prove the truth of the matter asserted (that the buy money was found on the defendant).

The State's arguments for a contrary conclusion are unpersuasive. The State first asserts that Trask's testimony was admitted for "the limited purpose of explaining why Trask had compared the serial numbers on the bills." This is not supported by the record. Trask never testified that he compared the serial numbers on the bills. He testified only that the money taken from the defendant included the buy money. He never testified about how he determined this to be the case.

Moreover, the trial court stated that it allowed the testimony to show "the procedure that [Trask] worked on," which included "where the money came from." The trial court expressly allowed Trask to testify that someone had "represented to him" that the buy money came from the defendant. Thus, the "procedure" about which the trial court allowed Trask to testify *included* the hearsay statement, admitted for the truth of what it asserted.

Alternatively, the State contends that because the defendant "refused" the trial court's offer to give a limiting instruction, "he cannot claim that he was prejudiced by the court's failure to do so." Because the "procedure" about which the court allowed Trask to testify included the fact that Trask was told that the buy money was found on the defendant, this is one of those rare cases in which a curative instruction, even if it had been given, would not have cured the prejudice. *See State v. LaBranche*, 118 N.H. 176, 179-80 (1978).

The State next invokes the invited error doctrine. Under that doctrine, "a party may not avail himself of error into which he has led the trial court." *State v. Bain*, 145 N.H. 367, 370 (2000) (quotation omitted). The State contends that on direct examination, Trask merely testified that he "understood" that the buy money had been found on the defendant. It was not until cross-examination that Trask testified that someone told him that this was the case. The State asserts that "because it was the defendant who elicited the testimony that the money had in fact been taken from him, he cannot now claim that he was prejudiced by that testimony." The State's effort to distinguish Trask's testimony on direct examination from his

testimony on cross-examination is unavailing. As discussed previously, Trask's testimony on both direct and cross-examination constitutes inadmissible hearsay. Trask's testimony on both direct and cross-examination referred to the *same* out-of-court statement by another declarant.

The State argues that even if Trask's testimony constituted inadmissible hearsay, the error was harmless because there was overwhelming alternative evidence that the defendant sold the cocaine to the CI. We agree.

 "An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict." *State v. Beede*, 156 N.H. 102, 109 (2007). "The State bears the burden of proving that an error is harmless." *Id.* "The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence." *Id.* "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *Id.*

We conclude that the State has established, beyond a reasonable doubt, that the defendant's conviction for selling cocaine was not affected by admission of Trask's testimony that the buy money was found on the defendant's person. The sale of narcotic drug (cocaine) charge alleged that the defendant knowingly "sold a quantity of the narcotic drug Cocaine . . . to a cooperating individual working with the New Hampshire State Police." Accordingly, for the jury to convict the defendant of this charge, the State had to prove, beyond a reasonable doubt, that the defendant knowingly sold cocaine to the CI.

The alternative evidence of the defendant's guilt on this charge was multi-faceted. Substantial evidence linked him to the controlled buy, which occurred at Vaillancourt's residence, where the defendant lived. Moreover, the defendant admitted to Taylor that, on March 25, 2009, the day on which the controlled buy occurred, he "had to wait for a girl and make a sale." From this statement, the jury reasonably could have inferred that the "girl" to whom he referred was the CI and that the "sale" he made on March 25 was the sale of cocaine to the CI. He also told Taylor that he would be "doing a long time for this." The two statements in context allowed the jury reasonably to infer that the defendant would be "doing a long time" for selling cocaine to the CI.

Additionally, there was substantial evidence that the defendant regularly sold drugs. The defendant admitted to the police that he was involved in drug dealing. Further, when the police searched the defendant's bedroom, the police found an open box of plastic sandwich bags that "were indicative

of packaging drugs for distribution." They also found a white powdered substance on the defendant's desk, which tested positive for cocaine. Moreover, a bag found in the BMW with items indicating that the bag belonged to the defendant also contained a ledger, plastic sandwich bags, a small bag containing a cutting agent, and a weight for calibrating a scale.

We conclude that, given the extent and nature of the alternative evidence of the defendant's guilt on this charge, such evidence was overwhelming and that the inadmissible testimony was inconsequential to it. Accordingly, we hold that any error in admitting the challenged testimony was harmless beyond a reasonable doubt. Although the defendant contends that admitting Trask's testimony violated his rights under the State and Federal Confrontation Clauses, our conclusion that any error was harmless beyond a reasonable doubt is dispositive of those claims. *See State v. Hernandez*, 159 N.H. 394, 401-02 (2009) (applying harmless error review to admission of evidence in violation of State and Federal Confrontation Clauses).

### 2. Photographs

The defendant next asserts that the trial court erred when it admitted two photographs that he asserts unfairly prejudiced the jury. One photograph was of the defendant, leaning back in a car seat and holding fanned-out paper currency in his hand. The second is a photograph that the police took of the first photograph tucked into the frame of a mirror, surrounded by photographs of the defendant's son. The defendant concedes that the second photograph was taken to document the location of the first photograph.

The defendant contends that both photographs were irrelevant. *See* N.H. R. Ev. 401, 402. He also argues that even if the photographs were marginally relevant, they were inadmissible under New Hampshire Rules of Evidence 403 and 404(b) because their limited probative value was substantially outweighed by the danger of unfair prejudice.

"We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case." *State v. Brooks*, 164 N.H. 272, 283 (2012) (quotation omitted). In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. *State v. Noucas*, 165 N.H. 146, 158 (2013) (decided July 16, 2013). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Irrelevant evidence is inadmissible. N.H. R. Ev. 402.

 Here, we conclude that the trial court reasonably determined that the challenged photographs were relevant to demonstrate that the defendant had dominion and control over the room in which the police found the cocaine and incriminating items. Proof of this fact was necessary to prove the possession of cocaine charge. *See Trebian*, 164 N.H. at 632. The charge alleged that the defendant knowingly "had in his possession, or under his control . . . a quantity of the narcotic drug cocaine." The cocaine at issue was found in the bedroom.

To establish that the defendant constructively possessed the cocaine, the State had to prove more than that he and Vaillancourt shared occupancy of Vaillancourt's home. *See State v. Cartier*, 133 N.H. 217, 221 (1990); *State v. Comeau*, 114 N.H. 431, 435 (1974) (evidence sufficient to establish constructive possession of drugs when evidence showed, among other things, that defendant had access to room where marijuana plants were found and kept personal possessions there). Although the defendant contends that the fact that he occupied the bedroom "was not . . . genuinely disputed," because he did not stipulate that he knew the cocaine was in his room and that he had custody of and exercised dominion and control over it, the State retained the burden of proving these facts beyond a reasonable doubt. *See Trebian*, 164 N.H. at 632.

 Under the balancing test common to Rules 403 and 404(b), we examine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Marti*, 140 N.H. 692, 694 (1996). "Under both rules, evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." *Id.* (quotation omitted). "Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." *State v. Nightingale*, 160 N.H. 569, 574 (2010). "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." *Id.* Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment

or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference. *Id.* at 574-75.

██ "The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." *Id.* at 575 (quotation omitted). "Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence." *Id.*

The trial court reasonably concluded that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to the defendant. In the context of this case, we cannot say that a photograph of the defendant holding fanned-out paper currency in his hand was likely to have any greater emotional impact on the jury than the other evidence tending to show that he regularly sold drugs. *See id.* Although the photograph "may have been prejudicial, we cannot conclude that [it] was so inflammatory as to substantially outweigh its probative value." *Id.* (quotation omitted).

The defendant contends that the juxtaposition of the images in the police photograph, which showed the photograph of the defendant holding the money and two photographs of his son, "served to elicit a sense of sympathy for the child . . . , and to provoke the jury's instinct to punish [the defendant] in an effort to protect the child." We find this speculative, conclusory argument unpersuasive.

For all of the above reasons, we conclude that the trial court did not unsustainably exercise its discretion when it admitted the photographs into evidence.

*Affirmed in part; and reversed in part.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.