# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2019-0736, <u>State of New Hampshire v. Joshua Heredia</u>, the court on March 24, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, we conclude that a formal written opinion is unnecessary in this case. The defendant, Joshua Heredia, appeals his convictions, following a jury trial in the Superior Court (<u>Anderson</u>, J.), on one count of simple assault, <u>see</u> RSA 631:2-a (2016); RSA 651:6, I(g) (2016), and two class B felony counts of riot, <u>see</u> RSA 644:1, I(a), IV (2016). The defendant argues that the trial court erred by: (1) denying his motion to strike one of the jurors for cause; and (2) denying his motion for a directed verdict with respect to one of the two riot charges. We affirm.

## I. Facts

The record supports the following facts. During the early morning hours of May 11, 2018, three Manchester police officers — Officers Stewart, Harrington, and Roscoe — responded to a noise complaint at a bar in Manchester. Upon their arrival, the officers observed the defendant, along with another individual, arguing with the bouncer outside of the bar. After speaking briefly with the officers, the defendant started to leave the area, but then returned. Shortly thereafter, the defendant's brother and other individuals joined the defendant outside the bar. The police asked the group to leave, but they refused, spilling out into the street in front of the bar. The defendant's brother then started yelling expletives at the officers and recording them with his cell phone. The officers decided to arrest the brother for disorderly conduct, but, as they attempted to restrain him, the group became increasingly aggressive, "shouting, screaming, swearing, [and] getting . . . very, very close" to the officers.

As the three officers struggled to restrain the brother, Officers Harrington and Roscoe became distracted by the group, leaving Officer Stewart alone with the brother. While Officers Harrington and Roscoe attempted to control the group, which grew larger after the bar closed, the brother began assaulting Officer Stewart, beating her in the head and face. Realizing Officer Stewart's predicament, Officer Roscoe jumped on top of the brother and punched him several times. The defendant began punching Officer Roscoe, shifting Officer Roscoe's attention away from the brother. The brother then punched Officer Stewart one last time. The defendant continued punching Officer Roscoe until

another officer tackled and arrested him.  As a result of the incident, Officers Stewart and Roscoe suffered various injuries, and both were diagnosed with concussions.  The defendant was charged with one count of resisting arrest, one count of simple assault, one count of second-degree assault, and, with respect to the injuries sustained by Officers Roscoe and Stewart, two class B felony counts of riot.

During jury selection, Juror B.L. asked the trial court to excuse him from jury service due to financial hardship.  He did not express any concern about his connections to law enforcement until defense counsel asked him about his juror questionnaire, which stated that he had friends or relatives in law enforcement.  Juror B.L. responded that, although he did not recognize any of the names of the officers involved in this case, he "work[s] with a ton of Manchester Police" at his physical therapy clinic, has "a friend of the family that's also police," and has "a lot of family in law enforcement."  When the trial court asked if his connections to law enforcement would "affect [his] ability to be fair and impartial in this case," Juror B.L. stated:

> I would try not to let it be, but I am sympathetic towards them just because . . . the nature of what I . . . do and my relationship to them.  I'm not going to lie and say I wouldn't (indiscernible), but I would try to be unbiased.

The trial court then asked if Juror B.L. could "resolve a difference in testimony between police and non-police based on the testimony at trial only."  Juror B.L. responded: "I would try to do that.  I would try to do that to the best of my ability."

Defense counsel moved to strike Juror B.L. for cause, arguing, in part, that Juror B.L. could not guarantee his impartiality in serving on the jury.  The trial court denied the motion and ruled that Juror B.L. was qualified, noting:

> The question is flawed to begin with because almost everybody, to some extent, would give some -- I mean, there are some people that wouldn't, but a lot of people -- the question really isn't an abstract, would you give deference to police.  The question is can you listen to two people testify and decide based on the facts of the testimony, the demeanor and all of that.
>
> I think he answered that question sufficiently well.  I'm going to find him qualified.

Neither the defendant nor the State struck Juror B.L. via peremptory challenge.  Juror B.L. was seated on the jury, which convicted the defendant on the simple assault and riot charges.

The defendant then moved for a directed verdict on both of the riot charges. He argued, in part, that no rational jury could have concluded that he engaged in violent or tumultuous conduct, as required by RSA 644:1, I(a), until he punched Officer Roscoe, at which point his brother had already punched Officer Stewart several times. Thus, the defendant argued, because his brother punched Officer Stewart several times before he intervened, the State could not prove that his actions caused Officer Stewart's concussion. See RSA 644:1, IV. The trial court disagreed, concluding that the jury could have found that the defendant "was part of the crowd that was surrounding the officers as they tried to restrain [the brother]." The trial court further noted that the fact that one of the brother's blows against Officer Stewart occurred after the defendant intervened further supported the jury's findings as to causation. Accordingly, the trial court denied the defendant's motion. This appeal followed.

## II. Analysis

On appeal, the defendant argues that the trial court's denial of his motion to strike Juror B.L. for cause violated his state and federal constitutional rights to an impartial jury because Juror B.L.'s statements that he would "try" to set aside his feelings about law enforcement were insufficient to establish his impartiality. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury. State v. Afshar, 171 N.H. 381, 386 (2018); see U.S. CONST. amend. VI; N.H. CONST. pt. I, arts. 21, 35. Generally, a juror is presumed to be impartial. Afshar, 171 N.H. at 386. A juror is impartial if he or she "can lay aside his or her impression or opinion and render a verdict based on the evidence presented in court." Id. When a juror's impartiality is questioned, the trial court must determine whether the juror is indifferent. Id.; see RSA 500-A:12, I (2010). "If it appears that any juror is not indifferent, he [or she] shall be set aside on that trial." RSA 500-A:12, II (2010).

The trial court's determination regarding the impartiality of the jurors selected is essentially a question of demeanor and credibility. State v. Tabaldi, 165 N.H. 306, 312-13 (2013). Thus, we afford special deference to the trial court's decision and we will not overturn the trial court's ruling unless it was an unsustainable exercise of discretion or against the weight of the evidence. Id. at 313.

The defendant draws our attention to State v. Town, 163 N.H. 790 (2012), which involved a challenge to a juror, who had been the victim of a sexual assault, as to whether she was qualified to sit on a case involving an

aggravated felonious sexual assault charge.  Town, 163 N.H. at 791-92.  After expressing concerns about her ability to be fair and impartial, the juror stated during voir dire: "I think I need to do this."  Id. at 791.  The juror then indicated that she was "not sure" whether she could be fair and impartial.  Id.  The trial court twice asked if the juror could set aside her personal situation and judge the case based solely upon the evidence, and each time the juror stated that she would "try."  Id. at 791-92.  In light of the juror's entire voir dire, we held that the juror's "indication that she would 'try' to be fair and impartial, without more, was insufficient to establish that she could lay aside her impression or opinion and render a verdict based on the evidence presented in court."  Id. at 794 (quotation omitted).  Accordingly, we reversed the defendant's conviction, concluding that the trial court's finding that the juror was qualified to serve on the jury was an unsustainable exercise of discretion.  Id. at 795.

We are not persuaded by the defendant's contention that Town is "nearly identical" to this case.  We recognize that, as in Town, Juror B.L. expressed concern about his ability to remain fair and impartial, indicating that his personal and professional connections to police officers made him "sympathetic" to them.  He also repeatedly reiterated during voir dire that he would "try" to remain fair and impartial, but did not affirmatively state that he would do so.  Cf. Tabaldi, 165 N.H. at 313 (upholding the trial court's decision not to strike a juror who stated that she would "do her best" to put aside her concerns regarding the defendant's prior convictions where the juror later affirmed that she would not judge the case on that basis).

However, when compared to the juror in Town, Juror B.L.'s personal connection to this case was more attenuated.  Unlike the juror in Town, whose statement, "I think I need to do this," Town, 163 N.H. at 791, suggested that she viewed serving on the jury as therapeutic or personally redeeming, Juror B.L. did not indicate that he had been the victim of a crime or that the nature of the charges against the defendant would impact his impartiality in any way.  That Juror B.L. did not recognize any of the names of the officers who were injured or appeared as witnesses further demonstrates that, unlike the juror in Town, his sympathies did not warrant his disqualification.

Ideally, the trial court would have further probed Juror B.L. about his sympathy for the police, particularly given the importance of police credibility in this case.  Nonetheless, we conclude that the trial court did not unsustainably exercise its discretion by finding Juror B.L. qualified to serve on the jury.  We have observed that it is not uncommon for jurors to express themselves in ambiguous and seemingly contradictory ways.  State v. Addison (Capital Murder), 165 N.H. 381, 448 (2013).  Although when individually excerpted from the voir dire transcript, some of Juror B.L.'s answers might be described as ambiguous, the record before us supports the trial court's ultimate decision that he could listen to the testimony at trial and decide the

case "based on the facts of the testimony, the demeanor and all of that."  On one hand, Juror B.L. voluntarily disclosed his connections to law enforcement in his juror questionnaire, and when prompted, admitted that he was "sympathetic" towards police.  On the other hand, Juror B.L. did not raise any concerns about his connections to law enforcement until defense counsel asked about his responses to questions posed in the juror questionnaire.  Indeed, the record indicates that Juror B.L. was primarily concerned with how spending time away from his clinic to serve on the jury would impact him financially.

Therefore, notwithstanding the ambiguous and seemingly contradictory nature of Juror B.L.'s statements, the record supports the trial court's ultimate conclusion that Juror B.L. could decide the case based solely upon the evidence presented at trial.  We further conclude that the trial court was best situated to evaluate whether Juror B.L. was sincere when he responded to inquiries about his connections to the police, and, relatedly, whether he was capable of setting aside those connections and rendering a verdict based upon the evidence.  See id. at 447.

To the extent that the defendant argues that the trial court's ruling was not entitled to special deference because it was not based upon Juror B.L.'s demeanor or credibility, we disagree.  Although the trial court did not expressly reference Juror B.L.'s demeanor or credibility in denying the defendant's motion to strike, all juror impartiality determinations rely, in part, on the trial court's assessment of the juror's demeanor and a host of other factors impossible to capture fully in the record.  See id.  Although the circumstances here present a close call, we conclude, in light of the special deference we afford to the trial court's decision, see id. at 447-48, that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion to strike Juror B.L. for cause.  Because the State Constitution provides at least as much protection as the Federal Constitution on this issue, see Tabaldi, 165 N.H. at 313, we reach the same conclusion under the Federal Constitution.

We next address the defendant's argument that, because there was insufficient evidence that his actions caused Officer Stewart's concussion, the trial court erred by denying his motion for a directed verdict with respect to the riot charge involving Officer Stewart.  A challenge to the sufficiency of the evidence raises a question of law, which we review de novo.  State v. Folley, 172 N.H. 760, 766 (2020).  We will uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt, considering the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the State.  Id.  We examine each item of evidence in the context of the entire case, and not in isolation.  Id.  The defendant bears the burden of proving that the evidence was insufficient to prove guilt.  Id.  If the record contains only circumstantial evidence, the defendant must establish that the evidence fails to exclude all reasonable conclusions except guilt.  Id.

5

To convict the defendant of riot as charged in the indictment, the State had to prove beyond a reasonable doubt that the defendant: "Simultaneously with [two] or more other persons . . . engage[d] in tumultuous or violent conduct and thereby purposely or recklessly create[d] a substantial risk of causing public alarm." RSA 644:1, I(a). The offense of riot is considered a class B felony "if, in the course of and as a result of the conduct, any person suffers physical injury." RSA 644:1, IV. The defendant "need not have personally engaged in the actual acts of physical violence to be prosecuted for a class B felony under RSA 644:1, IV." State v. Belkner, 117 N.H. 462, 467-68 (1977).

Here, the trial court instructed the jury that the State bore the burden of proving that the defendant's violent or tumultuous conduct caused Officer Stewart's concussion. The video evidence presented to the jury at trial depicts the defendant standing in the crowd that surrounded the officers as they attempted to restrain the brother. At trial, Officer Harrington testified that someone struck him as he was assisting the arrest of the brother, causing him to shift his attention to the crowd. Officer Harrington further testified that, when he stood up to address the crowd, his attention became fixed upon the defendant. Because Officer Roscoe was already attempting to control the crowd, this shift in Officer Harrington's attention left Officer Stewart alone with the defendant's brother, creating an opportunity for the brother to begin beating Officer Stewart in the head and face. Although the defendant denied striking Officer Harrington, he admitted that Officer Harrington pushed him because he "got a little too close" as the officers struggled with the brother. Based upon this evidence, the jury could have concluded that the defendant's participation in the crowd surrounding the officers shifted Officer Harrington's attention away from his brother, and, consequently, enabled his brother to assault Officer Stewart, thereby causing Officer Stewart's concussion.

The defendant argues that the evidence was insufficient to convict him of riot as a class B felony because the State failed to prove that he made physical contact with any of the officers before punching Officer Roscoe, at which point his brother had already punched Officer Stewart several times. According to the defendant, the fact that his attack on Officer Roscoe allowed his brother to punch Officer Stewart one last time is, at best, circumstantial evidence that his actions caused Officer Stewart's concussion. Because this evidence fails to "exclude all reasonable conclusions except guilt," Folley, 172 N.H. at 766, the defendant argues, the trial court should have granted his motion with respect to the riot charge against Officer Stewart.

We disagree with the premise of the defendant's argument. Although the record contains little, if any, evidence that the defendant made physical contact with any of the officers before punching Officer Roscoe, the jury could have concluded that the defendant was an active participant in the crowd, rather than an uninvolved bystander, and that his contributions to the tumultuous

6

behavior of the crowd fell within the definition of riot set forth in RSA 644:1, I(a).  See Belkner, 117 N.H. at 472 (finding sufficient evidence of riot based upon the defendant's participation in an incident at the New Hampshire State Prison where the defendant directed threats at prison guards, refused to leave the area, and made no effort to disassociate himself from the scene); State v. Garcia, 162 N.H. 423, 433 (2011) (concluding that the evidence of riot was "overwhelming" where multiple witnesses observed the defendant at the scene holding a baseball bat with a group of people who were arguing with the victim); see also State ex rel. Juv. Dept. v. Saechao, 2 P.3d 935, 940-41 (Or. Ct. App. 2000) (finding sufficient evidence of riot under an Oregon statute, similar to RSA 644:1, I(a), where the defendant was part of a group that surrounded the victim and blocked his escape as other individuals began assaulting him).  The jury could have also concluded that the defendant's actions diverted Officer Harrington's attention away from the brother, creating an opportunity for the brother to assault Officer Stewart.  It is of no moment whether the defendant personally assaulted Officer Stewart, as the jury could have concluded that his actions enabled his brother to do so.  See Belkner, 117 N.H. at 467-68.  As the trial court noted, that the defendant's subsequent attack on Officer Roscoe allowed the brother to deliver one final blow to Officer Stewart further supports the jury's conclusion as to causation.  Therefore, viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient evidence that Officer Stewart sustained her concussion "in the course of and as a result of" the defendant's riotous conduct.  RSA 644:1, IV.

### III. Conclusion

For the foregoing reasons, we affirm the defendant's convictions on one count of simple assault, see RSA 631:2-a; RSA 651:6, I(g), and two counts of riot as a class B felony, see RSA 644:1, I(a), IV.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

7