# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2021-0566, <u>State of New Hampshire v. Jonathan Ames</u>, the court on February 9, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, Jonathan Ames, appeals his conviction, following a jury trial in Superior Court (<u>Ignatius</u>, J.), for misdemeanor cruelty to animals.  <u>See</u> RSA 644:8, III-a (2016).  He argues that the trial court erred by: (1) admitting a post mortem photograph of the injury suffered by the dog that was the subject of the charge; (2) permitting the prosecutor and witnesses to use the dog's name; and (3) finding a juror qualified to sit who had a dog with the same name as the dog in this case.

The record before us contains the following evidence.  In April 2019, the defendant and his girlfriend were in the basement of their home playing darts and listening to music with another couple.  Ozzy, one of the dogs at their home, was owned by the girlfriend's ex-fiance.

The defendant provided the following testimony.  At some point, his girlfriend advised him that Ozzy had "gone to the bathroom on the floor" and she told him to "deal with it."  He brought Ozzy over to the place on the floor and put his nose "four or five inches from it, not directly in the pile."  He then followed the dog up the stairs "to put him on a leash and bring him outside."  When he attempted to grab the dog's collar, the dog bit his hand and caused puncture wounds.  In an attempt to restrain the dog so that no one else would "get attacked by him," the defendant put him in his truck.  The defendant went back inside, reported that he had been bitten and said that he hoped that the dog's owner would come and pick him up.  As the other people were attempting to contact the dog's owner, the defendant decided that he should seek medical care for the bite and headed out to his truck.  When he arrived at his truck, he observed that the dog remained aggressive.  When the dog lunged at him, the defendant shot him.  Believing that the dog was dead, the defendant drove away to seek medical care.  He later learned that the dog was not dead when he drove away.

Conway Police Officer Smith responded to a report that a dog had been shot at the residence.  He testified that, when he arrived, the dog was in shock and "visibly in pain."  Patrolman Baldwin testified that when he arrived the dog

was "whining" and "breathing heavily." Baldwin transported the dog to the veterinarian where the dog was able to walk in but was "kind of staggering, a disoriented motion." Baldwin photographed the dog's injuries. The treating veterinarian testified that the dog had "blood all over the face, mostly the lower half of the face and all down the chest and the forelimbs." The dog remained conscious during the examination and x-ray of its jaw.

The defendant was subsequently indicted on a charge of felony cruelty to animals. See RSA 644:8, III-a (2016) (person "who purposely beats, cruelly whips, tortures or mutilates any animal" is guilty of class B felony). Following trial, he was found guilty of the lesser-included offense of misdemeanor cruelty to animals. See RSA 644:8, III(b) (person who negligently beats, cruelly whips, tortures or mutilates any animal is guilty of misdemeanor if first offense).

On appeal, the defendant asserts that the central issue at trial was whether he "was criminally culpable for failing to realize that the dog was still alive when he left to seek medical attention." He first argues that the trial court erred by admitting a post mortem photograph of the dog's injury. He contends that, because the photograph depicted "a bloody and gruesome wound" to the dog's mouth, it would have an "emotional impact" on the jurors. In addition, he asserts that the photograph of the injured dog, a common companion animal, "appealed to the jury's sense of resentment and outrage." Because other evidence established that the dog was shot in the mouth "and suffered as a result," the defendant argues that any probative value was substantially outweighed by its prejudicial effect. See N.H. R. Ev. 403.

We review the trial court's evidentiary ruling to determine whether its exercise of discretion is sustainable; we will reverse only if the court's decision was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Clark, 174 N.H. 586, 589 (2021). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. When we weigh the evidence under the Rule 403 balancing test, "we consider: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference." Id. at 590.

As the State asserts, the photograph was relevant to whether the dog was mutilated. See RSA 644:8, III-a. If we were to accept the defendant's argument that the photograph, which depicted the dog's injuries, should be excluded because it appealed to the jury's sense of resentment and outrage, the State would be handicapped in any case in which it sought a conviction on an animal cruelty charge. Moreover, the trial court observed in its order denying the defendant's motion in limine, which sought to bar use of photographs of the dog's injury: "Photographs are relevant to the charge and are not unduly prejudicial.

2

Any juror who expressed an inability to view the photographs was excluded for cause." Having reviewed the record before us, we conclude that the trial court's decision to admit the photograph was sustainable.

The defendant also argues that the trial court erred by permitting the prosecutor and witnesses to refer to the dog by its name.

On the day of jury selection, defense counsel raised this issue with the court:

> One of the things that I think is concerning as I read through the indictment and as we talked about the cases, I think that the Court has seen — when I refer to Ozzy — to the dog, I refer to him as the dog. I think that the State holds in their indictments, and in the court even at times is referring to the dog as Ozzy. And I'm not sure that we should be referring to the dog by its name. I think that it has a tendency to humanize the animal in a way that I think may garner sympathy more than is necessary under the circumstances. I don't see the relevance in talking about its name. The only reason I could see in talking about the dog's name is to have the jury think of it as a pet, as somebody's animal that they cared about, et cetera, which would only lead to furthering the concerns I have about people thinking of their own pets or experiences that they've had.

Defense counsel cited no cases in support of his request and, as the trial court observed, he had not previously filed a motion in limine requesting such a ruling. The trial court denied the request, stating:

> Okay. I can't say that I've ever seen a case where somebody asked that the name of the animal not be used. I haven't done a lot of animal cases, but some, and no one's ever made that request before. I guess I don't see a basis to block the use of the name. I would not want it to be referred to as the victim, because I think that is different; although the allegation is the animal victimized, no question about that, but that we agree not to use that phrase. But I don't see anything so prejudicial to refer to it by its name, Ozzy.

The next day, in discussion with counsel before the jury was sworn, the trial court requested that counsel limit the number of times that the dog was referred to by name.

On appeal, the defendant observes that Rule 403 permits a court "to exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice" and, further, that Rule 611 provides that a trial court "should exercise reasonable control over the mode and order of examining

3

witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth." According to the defendant, the use of its name humanized the dog, thereby inviting the jury to view the animal's shooting as it would that of a person. He contends that this is significant because "[w]ith a culpable mental state, killing a natural person always constitutes a crime;" "[r]egardless of mental state, however, killing an animal, in and of itself, does not constitute a crime." We are not persuaded.

The prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged. State v. Tabaldi, 165 N.H. 306, 322 (2013). The basis for the defendant's request at trial that the dog not be identified by name was that the jury would think of it as a pet. However, evidence presented at trial, including the defendant's own testimony, established that the dog was in fact a pet who had lived in the home for some time.

The indictment, which alleged that the defendant "purposely beat, tortured, or mutilated an animal. . . by shooting it in the face with a gun," was read to prospective jurors during jury selection. Prospective jurors were then asked: "Do you feel so strongly about animals that you would have a hard time remaining impartial in this case if you were picked as a juror?" Those who indicated that they would have difficulty remaining impartial were excused from serving. And the trial court instructed the jury on the elements of the charged offense, including the lesser-included offense, following closing arguments. See State v. Palermo, 168 N.H. 387, 397 (2015) (jurors are presumed to follow the court's instructions).

The defendant also challenges the trial court's decision to find a juror qualified who had a dog named Ozzy. A juror is generally presumed to be impartial; a juror is considered to be impartial if she can lay aside her impression or opinion and render a verdict based on the evidence presented in court. State v. Tabaldi, 165 N.H. 306, 312 (2013). In this case, the juror reported that she had dogs and that she had a dog named Ozzy. When asked whether she would be able to separate her dog from any reference in the case to the dog of the same name, she responded: "Absolutely." She also confirmed that she could consider the facts presented in the defendant's case and not base the verdict "for or against anyone."

When a trial court on voir dire has determined that a juror is free from prejudice, it is our duty on appeal to evaluate the voir dire testimony of the empaneled jury to determine whether an impartial jury was selected. State v. Town, 163 N.H. 790, 794 (2012). Absent an unsustainable exercise of discretion or a finding that the trial court's decision was against the weight of the evidence, we will not disturb its ruling. Id. The juror's response that she

4

could be impartial was unwavering.  Given the strength of her individual responses to the <u>voir</u> <u>dire</u> questions, we find no error in the trial court's ruling.  Accordingly, we affirm the defendant's conviction.

<u>Affirmed</u>.


  MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.


**Timothy A. Gudas,**
**Clerk**