## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 16 2020, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Riddle, *Appellant-Defendant,* | December 16, 2020 |
| | Court of Appeals Case No. 20A-CR-24 |
| v. | Appeal from the Floyd Superior Court |
| | The Hon. Jason M. Mount, Special Judge |
| State of Indiana, *Appellee-Plaintiff.* | Trial Court Cause No. 22D03-1505-F4-805 |

**Bradford, Chief Judge.**

# Case Summary

On April 8, 2015, the intoxicated Christopher Riddle was driving his truck in Floyd County when he lost control and collided with a tree, killing his passenger. After several years of delays and one mistrial, a jury convicted Riddle of Level 5 felony operating a vehicle while intoxicated ("OWI") causing death in October of 2019. The trial court sentenced Riddle to three years of incarceration, with one year to be served in the Department of Correction ("DOC"), one year to be served on home detention, and one year suspended to probation. Riddle contends that the trial court erred in denying his motions to discharge based on the provisions of Indiana Criminal Rule 4(C), the State produced insufficient evidence to sustain his conviction, and the trial court abused its discretion in refusing to deliver two tendered jury instructions. Because we disagree, we affirm.

# Facts and Procedural History

On the evening of April 8, 2015, Tammy Klueh heard a loud crash on Borden Road outside the Floyd County home she shared with her husband, and the Kluehs ran outside to investigate. Once outside, Tammy observed a truck that had crashed into a tree. The passenger, Casey Becht, appeared to be dead, and when Klueh checked Becht for a pulse, she could not detect one. Klueh noticed that there were empty beer cans in the bed of the truck. The pathologist who later conducted an autopsy on Becht determined that the cause of Becht's death had been blunt-force trauma. Specifically, Becht had suffered a broken neck and a severe fracture at the base of the skull, which had caused bleeding in his

brain. Becht had also suffered a broken humerus, two broken femurs, two broken ankles, and numerous smaller injuries.

[3] Matthew Gleitz, a paramedic and firefighter who responded to the scene, noticed that the cab of Riddle's truck smelled like alcohol. When Gleitz asked Riddle if he had had anything to drink that day, Riddle replied that he had had "a lot." Tr. Vol. V p. 121. When the EMT working with Gleitz asked Riddle the same question, Riddle replied that he had either had "a s[***] ton" or "a f[***] ton" to drink. Tr. Vol. V p. 178. Gleitz also noticed beer cans in the cab of the truck and could smell alcohol on Riddle's breath, while the EMT smelled alcohol on Riddle's person. A sample of Riddle's blood was taken at the hospital where he was taken for his injuries, and it was later determined that his blood alcohol concentration was 0.12 grams of ethanol per one hundred milligrams of blood. Forensic analysis revealed that Riddle's truck had been northbound and would have hit the tree at approximately a forty-five-degree angle. The accident scene was consistent with Riddle overcorrecting after having gone left of the center line, losing control of the truck, and skidding into the tree.

[4] On May 7, 2015, the State charged Riddle with Level 4 felony operating a vehicle with an alcohol concentration equivalent of 0.15 or greater causing death, later amended to Level 5 felony operating a vehicle with an alcohol concentration equivalent of 0.08 or greater causing death. Riddle was arrested on June 29, 2015.

[5]     On December 30, 2015, pursuant to the State's December 15, 2015, notice of court congestion, the trial court reset the trial for February 16, 2016. Beginning on February 17, 2016, Riddle moved several times to continue the jury trial set for February 16, 2016, which ultimately resulted in the trial court setting a jury trial for April 3, 2017. The last of these was a motion for continuance filed on January 5, 2017, which Riddle filed because he wished to depose some State's witnesses, depositions which had been scheduled for after the then-scheduled trial date of January 23, 2017. The trial court's grant of his motion resulted in trial being reset from January 23, 2017, to April 3, 2017. A series of further motions to continue trial from both parties resulted in jury trial being set for May 7, 2018.

[6]     On May 2, 2018, Riddle filed a verified petition for change of judge in which he requested the appointment of a special judge. On May 4, 2018, the trial court judge issued an order recusing herself. On May 7, 2018, Special Judge Jason Mount was appointed and accepted his appointment on June 12, 2018. On June 20, 2018, the trial court set a jury trial for June 28, 2018. On June 25, 2018, the trial court found that the jury trial set for June 28, 2018, needed to be continued over defendant's objection due to court congestion. Also, on June 25, 2018, Riddle moved for discharge pursuant to Criminal Rule 4(C). On June 28, 2018, the trial court denied Riddle's motion for discharge. On August 8, 2018, Riddle moved to correct error regarding the denial of his motion for discharge. On August 13, 2018, the trial court began jury trial proceedings.

After conducting *voir dire*, however, the jury pool was exhausted, and the trial court declared a mistrial. The trial court set a jury trial for October 29, 2018.

[7] On October 31, 2018, the State moved to amend the charging information to add a count of Level 5 felony OWI causing death, which motion was granted on March 8, 2019. Meanwhile, on December 27, 2018, Riddle filed a second motion for discharge pursuant to Criminal Rule 4(C), which the trial court denied. On January 2, 2019, Riddle filed an objection to Special Judge Mount on the basis that he had allegedly never accepted jurisdiction and asked that all orders by him be stricken. On January 2, 2019, Riddle also filed an objection to a continuance ordered by Judge *Pro Tempore* Alison Frazier.[1] On January 3, 2019, after a telephonic hearing involving Special Judge Mount, Judge *Pro Tempore* Frazier, and the parties, Judge *Pro Tempore* Frazier issued an order continuing the trial over objections from both parties and providing that Special Judge Mount would preside over the case going forward.

[8] On February 26, 2019, Riddle filed a third motion for discharge pursuant to Criminal Rule 4(C). On February 27, 2019, Riddle petitioned for another change of judge on the basis that the trial court had not ruled upon his earlier motion to correct error filed with respect to his first motion for discharge. On March 11, 2019, the trial court entered a *nunc pro tunc* entry indicating that Special Judge Mount had indeed accepted his appointment on June 12, 2018.

---

[1] Judge Frazier was appointed Judge *Pro Tempore* on December 13, 2018, pursuant to Special Judge Mount's voluntary request for a temporary leave of absence. (Appellant's App. Vol. IV p. 94).

On March 11, 2019, the trial court denied Riddle's motion for discharge filed on February 26, 2019, and his petition for change of judge filed on February 27, 2019. On March 14, 2019, Riddle moved to vacate the trial set for March 18, 2019, so that he could pursue an interlocutory appeal. On March 14, 2019, the trial court granted Riddle's motion and ordered that the matter be "continued generally on [Riddle's] motion" and that the matter was to be reset for trial within a reasonable amount of time upon Riddle's written request to redocket the matter for jury trial. Appellant's App. Vol. IV p. 102. On April 10, 2019, Riddle petitioned for certification of the trial court's order denying his motion for discharge for interlocutory appeal, which the trial court granted on April 11, 2019. On June 7, 2019, we declined to accept jurisdiction over Riddle's interlocutory appeal.

A Jury trial began on October 28, 2019, after which the jury found Riddle guilty of Level 5 felony OWI causing death. On December 6, 2019, the trial court sentenced Riddle to three years of incarceration, with one year to be served in DOC, one year to be served on home detention, and one year suspended to probation.

# Discussion and Decision

## I. Whether the Trial Court Clearly Erred in Denying Riddle's Discharge Motions

Riddle contends that the trial court erred in denying his motions for discharge, in all of which he alleged that the State had failed to bring him to trial in

compliance with the provisions of Criminal Rule 4(C).  That rule provides, in part, that

> [n]o person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar[.]  Any defendant so held shall, on motion, be discharged.

[12]  When evaluating a Criminal Rule 4 motion for discharge, "in cases where the issue is a question of law applied to undisputed facts, the standard of review—like for all questions of law—is de novo." *State v. Larkin*, 100 N.E.3d 700, 703 (Ind. 2018) (citing *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013)). "However, in cases where a trial court makes a factual finding of congestion or emergency based on disputed facts, the standard of review for appellate courts is not abuse of discretion, but the clearly erroneous standard." *Id*. "The State bears the burden of bringing the defendant to trial within one year." *Id*. (citing *Bowman v. State*, 884 N.E.2d 917, 919 (Ind. Ct. App. 2008), *trans. denied*). "Rule 4(C) provides a defendant may not be held to answer a criminal charge for greater than one year, unless the delay is caused from the defendant, emergency, or court congestion." *Id*. (citing *Curtis v. State*, 948 N.E.2d 1143, 1148–49 (Ind. 2011)).  The one-year period begins running from "the date the criminal charge against [a] defendant is filed, or from the date of his arrest on such charge, whichever is later." Crim. R. 4(C).

## A. Criminal Rule 4(C) Does Not Apply Following Mistrials

As an initial matter, we note that the provisions of Criminal Rule 4(C) do not apply following a mistrial, one of which occurred in this case on August 13, 2018. "It is obvious that [Criminal Rule 4(C)] does not anticipate mistrials." *State ex rel. Brumfield v. Perry Cir. Ct.*, 426 N.E.2d 692, 695 (Ind. 1981). "The rule speaks in terms of the time allowed the State to bring a defendant to trial not to convict him." *Id.* The only limitation on the deadline for retrial is that the retrial must occur within a "reasonable time." *Id.* "[W]hen a retrial is required, a defendant must rely on his constitutional speedy trial right, which requires that a defendant be tried within a reasonable time." *State v. Montgomery*, 901 N.E.2d 515, 519 (Ind. Ct. App. 2009), *trans. denied*; *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972) (establishing the standard for evaluating claims pursuant to the Sixth Amendment right to a speedy trial). Riddle, however, does not argue, much less establish, that the State failed to retry him within a reasonable time following the mistrial on August 13, 2018. To the extent that Riddle's argument involves delays following his mistrial, we neither consider them in the context of Criminal Rule 4(C) (because it does not apply) nor evaluate the question of whether the State retried him within a reasonable time (because he does not make this argument on appeal).

## B. Whether Riddle's Trial Complied with Criminal Rule 4(C)

The only question left for our review is whether the State failed to initially bring Riddle to trial within one year, subject to the provisions of Criminal Rule 4(C). As mentioned, Criminal Rule 4(C) states that a defendant's own delays of trial,

including continuances made on his motion, are exempted from the State's one-year deadline. Additionally, delays caused by court congestion or by a defendant's motion for a change of judge do not count against the State. Crim. R. 4(C); *Larkin*, 100 N.E.3d at 705–06. The amount of time subject to appellate review is the 1141 days that passed between June 29, 2015 (the date of his arrest), and August 13, 2018 (the date his first trial began).

[15] Riddle concedes that several pre-August 13, 2018, delays are attributable to him, accounting for a total of 756 days. These include motions to continue trial filed on February 17, 2016 (eighty-three days); March 23, 2016 (125 days); July 18, 2016 (ninety-nine days); October 5, 2016 (110 days); April 5, 2017 (173 days); and August 16, 2017 (166 days). This leaves 385 days of delay for us to evaluate. Riddle argues that pre-August 13, 2018, delays caused by his January 5, 2017, motion to continue trial (seventy days) and his May 2, 2018, motion for change of judge (fifty-two days) should be charged to the State. If Riddle is incorrect about either delay, the delays attributable to the State prior to his mistrial would fall well below the 365-day threshold.

[16] Riddle argues that his January 5, 2017, continuance request, which resulted in a seventy-day delay, should be charged to the State because the State allegedly disclosed witnesses so late that they could not be deposed by the then-scheduled trial date. When a delay can be attributed to both sides, however, it is not counted against the deadline of Criminal Rule 4(C), and we conclude that that is the case here. *See Ikemire v. State*, 852 N.E.2d 640, 643 (Ind. Ct. App. 2006) (concluding that there was no violation of Criminal Rule 4(B) where "Ikemire

was not without fault for th[e] delay"), *trans. denied.* In Riddle's January 5, 2017, motion to continue jury trial, he noted that he wished to depose all of the State's witnesses and that some depositions had been scheduled for February 10, 2017, or after the then-scheduled trial date. Riddle also noted that the State had added the names of three witnesses to a list filed in December of 2016. Riddle's argument seems to be that he was forced to file for a continuance because he was blindsided by the State's late disclosure of witnesses such that he could not depose them in time for trial. Riddle's argument, however, is based on the faulty premise that his desire to depose only late-disclosed witnesses caused him to seek a continuance.

[17] In Riddle's notice of intent to depose the State's witnesses, also filed on January 5, 2017, he indicated that he had scheduled depositions of State's witnesses Cheryl Anderson, Sheila Arnold, and Christina Rainey for February 10, 2017. Of those three witnesses, however, only Rainey's name first appeared on the State's December of 2016 witness list; Anderson's name had been provided to Riddle in May of 2015 and Arnold's had been provided in July of 2015. Under the circumstances, we conclude that the delay was attributable at least as much to Riddle's failure to depose two witnesses he had known about for well over a year as it was to the State's inclusion of a new witness on its December of 2016 witness list. *See Payton v. State*, 905 N.E.2d 508, 511, 512 (Ind. Ct. App. 2009) (concluding that a delay was chargeable to the defense where defense counsel indicated he needed additional time to take depositions), *trans. denied*. The trial court did not err in finding that Riddle's January 5, 2017, continuance request

was partially attributable to him, and therefore did not count against Criminal Rule 4(C)'s one-year limit. This seventy-day delay leaves us with, at most, 315 days of delay that can be charged solely to the State. Consequently, we need not address Riddle's argument concerning his motion for change of judge. The trial court did not abuse its discretion in denying Riddle's motions for discharge pursuant to the provisions of Criminal Rule 4(C).

## II. Whether the State Produced Sufficient Evidence to Sustain Riddle's Conviction

[18]     Riddle contends that the State failed to produce sufficient evidence to sustain his conviction for OWI causing death. When a defendant challenges the sufficiency of the evidence used to convict him of a crime, we consider only the probative evidence and reasonable inferences arising therefrom supporting the conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm a conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*. Put another way, reversal of a defendant's conviction "is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*, 2018 WL 522813 (memorandum decision on rehearing). This standard of review does not permit us to reweigh the evidence or allow us to judge the credibility of the witnesses. *McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). Where there is

conflicting evidence in the record, we consider the evidence in the light most favorable to the judgment. *Drane*, 867 N.E.2d at 146.

[19] In order to sustain Riddle's conviction for OWI causing death, the State was required to establish that Riddle caused the death of Becht while OWI. *See* Ind. Code § 9-30-5-5(a)(3). Riddle argues only that the State failed to prove that Riddle caused the death of Becht. (Appellant's Br. 35-37). In cases such as this, the State must show that the "defendant's operation of a motor vehicle while intoxicated was a 'substantial cause' of the resulting death, not merely a 'contributing cause.'" *Radick v. State*, 863 N.E.2d 356, 358 (Ind. Ct. App. 2007) (citing *Abney v. State*, 766 N.E.2d 1157, 1177 (Ind. 2002)). The State, however, "is not required to prove that the defendant's intoxication directly and proximately caused the resulting injury." *Id*. "Analysis […] should focus on the driver's acts[.] If the driver's conduct caused the injury, he commits the crime; if someone else's conduct caused the injury, he is not guilty." *Micinski v. State*, 487 N.E.2d 150, 154 (Ind. 1986).

[20] We conclude that there is sufficient evidence from which the jury could have found that Riddle's intoxication was a substantial or important cause of Becht's death. It is undisputed that the cause of Becht's death was the crash and that Riddle was intoxicated at the time. Moreover, the State presented evidence that Riddle was speeding just before the crash and that the only reasonable explanation for the crash was that he had crossed the center of the road and overcorrected, which led to the truck skidding and slamming into a tree. The speed limit on Borden Road is thirty miles per hour, and Indiana State Police

Trooper Travis Baker calculated that "the fastest that a car would make [the turn on Borden Road] before losing lateral stability" and skidding sideways was between 50.8 and 57.9 miles per hour. Tr. Vol. VII p. 61. Indiana State Police Detective Phillip D'Angelo testified that his conservative estimate was that when the truck finally struck the tree it was going thirty to forty miles per hour, even after skidding across the road and some ground. The jury was free to infer from the above that Riddle was speeding just before the crash. Moreover, Deputy Brad Scott of the Floyd County Sheriff's Department testified that he had had special training in investigations of drunk driving and accident reconstruction, and he explained that overcorrection was the "only explanation [that he] could come up with" for why the crash had occurred. Tr. Vol. V p. 78. The jury was free to find that Riddle's intoxication substantially contributed to his speeding and overcorrection, which directly led to the crash that resulted in Becht's death.

[21] There is no evidence that anything *other* than Riddle's driving caused the accident. Detective D'Angelo explained that Riddle's truck would not have hydroplaned because the tires had sufficient tread on them and the water on the road was not deep enough in any event. Additionally, Detective D'Angelo ruled out a blown tire as the cause of the accident because there were no gouge marks in the road that would have occurred had a tire blown on the truck. We conclude that the State presented sufficient evidence to sustain Riddle's conviction, and his arguments to the contrary are nothing more than requests to

reweigh the evidence, which we will not do. *See McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

## III.  Whether the Trial Court Abused Its Discretion in Instructing the Jury

[22]   "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009), *trans. denied*. "The manner of instructing a jury is left to the sound discretion of the trial court." *Quiroz v. State*, 963 N.E.2d 37, 41 (Ind. Ct. App. 2012), *trans. denied*. We review the issuance of a jury instruction for an abuse of discretion. *Brooks v. State*, 895 N.E.2d 130, 132 (Ind. Ct. App. 2008).

[23]   "To constitute an abuse of discretion the instruction must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Id.* (citing *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999)). "In reviewing a trial court's decision to give tendered jury instructions, [this Court] consider[s]:  '(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given.'" *Id.* (quoting *Chambers v. State*, 734 N.E.2d 578, 580 (Ind. 2000)).

### A.  Tendered Instruction on Causation

[24]   The trial court instructed the jury as follows regarding causation:

Final Instruction No. 14: [A] person's conduct is legally responsible for causing a death if: (1) the death would not have occurred without the conduct, and (2) the death was a natural, probable, and foreseeable result of conduct. This is called a "proximate cause[.]" There can be more than one proximate cause for an injury.

Final Instruction No. 15: "Cause of death" is the event which initiates a chain of events, however short or protracted, that results in the death of an individual.

Tr. Vol. VIII p. 192.

[25] Riddle tendered the following instruction on causation, which the trial court declined to give: "The State must prove that the Defendant's [OWI] was a 'substantial cause' of the resulting death, not a mere 'contributing cause' of the resulting death." Appellant's App. Vol. V p. 18. Riddle argues that because language from the Indiana Supreme Court's decisions in *Abney* and *Micinski* supported the giving of his tendered instruction, it should have been given in addition to the causation instructions the trial court did give. Even if we assume that language in *Abney* and *Micinski* supported the giving of Riddle's tendered instruction, we conclude that the trial court's final instructions already covered the material included in the tendered instruction.

[26] It is true that the *Abney* Court approved the Court of Appeals' conclusion that "the State must prove the defendant's [OWI] was a 'substantial cause' of the resulting death, not a mere 'contributing cause[,]'" but it clarified in the next paragraph that "[t]his is simply a short-handed way of stating the well-settled rule that the State must prove the defendant's conduct was a proximate cause of the victim's injury or death." *Abney*, 766 N.E.2d at 1177–78. The trial court's

Final Instruction No. 14 covered proximate cause in some detail and so rendered Riddle's tendered instruction on substantial cause redundant and unnecessary. The trial court did not abuse its discretion in rejecting Riddle's tendered instruction on causation.

## B. Tendered Instruction on Whether Evidence Must Exclude Every Reasonable Theory of Innocence

[27] Riddle contends that the trial court abused its discretion in declining to deliver the following tendered instruction: "In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." Appellant's App. Vol. V p. 4. The Indiana Supreme Court has held that

> when the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.*

*Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012) (emphases in original).

[28] Riddle was not entitled to a *Hampton* instruction because the *actus reus* in this case was not proven solely by circumstantial evidence. "Direct evidence is '[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.'" *Id.* at 489 (quoting BLACK'S LAW DICTIONARY 636 (9th ed. 2009)). "A defendant's confession of guilt to another person is direct evidence." *Ivory v. State*, 141 N.E.3d 1273 (Ind. Ct.

App. 2020) (citing *Carr v. State*, 728 N.E.2d 125, 131 (Ind. 2000)), *trans. denied*. OWI was the *actus reus* in this case, so the State was required to prove, *inter alia*, that Riddle was intoxicated when he operated his motor vehicle. Ind. Code § 9-30-5-5(a)(3). Riddle essentially confessed to being intoxicated at the scene of the crash, making statements to first responders that could support a reasonable inference of intoxication. Riddle admitted to the paramedic and EMT that he had consumed a great deal of alcohol, going so far as to say that he had had "a s[***] ton" or "f[***] ton" to drink. Tr. Vol. V p. 178. Because the State did not rely solely on circumstantial evidence to prove Riddle's *actus reus*, *Hampton* did not require the trial court to provide a reasonable-theory-of-innocence instruction. The trial court did not abuse its discretion by denying Riddle's request for such an instruction.[2]

[29] We affirm the judgment of the trial court.

Najam, J., and Mathias, J., concur.

---

[2] Riddle does not actually claim that the State proved the *actus reus* soley through circumstantial evidence, arguing instead that it proved causation in that manner. Even though *Hampton* would not seem to apply to such a claim, we choose to address Riddle's claim as it would relate to *actus reus*.